**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| RICHARD SNYDER and CATHERINE SNYDER, | |
| *Plaintiffs,* | **Civ. A. No. 08-CV-01270 (GBL-TCB)** |
| v. | |
| GREENBERG TRAURIG, LLP et al. | |
| *Defendants*. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE GREENBERG TRAURIG DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND REQUEST FOR PAYMENT OF COSTS AND A STAY OF PROCEEDINGS PURSUANT TO RULE 41(d)

## Table of Contents

**Table of Authorities** ................................................................................................ iii

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY** ............................................ 3

   **A.**  **The Execution of the Seizure Order at Plaintiffs' Home Resulted in Seizure of Evidence of Mrs. Snyder's Sale of Counterfeit Dresses.** ............................................... 3

   **B.**  **The Court Held Mrs. Snyder Liable in the Trademark Enforcement Action.** ........... 4

   **C.**  **Plaintiffs Have Now Filed Four Separate Complaints Against the GT Defendants.** ... 5

**STANDARD OF REVIEW** ......................................................................................... 6

**ARGUMENT** .......................................................................................................... 7

   **I.**  **PLAINTIFFS SHOULD PAY THE GT DEFENDANTS' COSTS UNDER RULE 41(d) PRIOR TO BEING PERMITTED TO PROCEED ON ANY COUNTS THAT SURVIVE THIS MOTION TO DISMISS.** .................................................................... 7

   **II.**  **PLAINTIFFS' ACTION SHOULD BE DISMISSED WITH PREJUDICE.** .............. 8

     **A.**  **The Court Should Dismiss All Counts Because They Are Barred by the Doctrine of *Res Judicata*.** ............................................................................................ 8

     **B.**  **The First Amended Complaint's Conclusory Allegations of Harm Are Insufficient To State Grounds for Relief.** .......................................................................... 11

     **C.**  **None of the Individual Counts in the First Amended Complaint States a Claim Against the GT Defendants.** .............................................................................. 14

**CONCLUSION** .................................................................................................... 30

## Table of Authorities

### Statutes:

15 U.S.C. § 1064..............................................................................................15

15 U.S.C. § 1116..............................................................................................22

15 U.S.C. § 1120..............................................................................................15

42 U.S.C. § 1983...........................................................................5, 17, 18, 19, 20, 21

### Cases:

*Abella v. Rubino*, 63 F.3d 1063 (11th Cir. 1995)..............................................17

*Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659 (E.D. Va. 2001)................25

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999).....................................18

*Andrews v. Daw*, 201 F.3d 521 (4th Cir. 2000) ...............................................7

*Arias v. Jokers Wild, Inc.*, 73 Va. Cir. 281 (2007).............................................26

*Baltimore Scrap Corp. v. The David J. Joseph Co.*, 237 F.3d 394 (4th Cir. 2001)...........20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................................6, 11, 13, 14

*Benn v. Universal Health Sys.*, 371 F.3d 165 (3d Cir. 2004)..............................21

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)..........................12, 17, 18, 21

*Butts v. Babineau*, 2008 U.S. Dist. LEXIS 107914 (E.D. Va. July 28, 2008)..................17

*Butz v. Economou*, 438 U.S. 478 (1978)........................................................17

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* ..........................28
    511 U.S. 164 (1994)

*Clorox Co. v. Inland Empire Wholesale Grocers, Inc.*, 874 F. Supp. 1065 ....................22
    (C.D. Cal. 1994)

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................6

*Cooper v. Horn*, 448 S.E.2d 403 (Va. 1994) ..................................................28

*Donohoe Constr. Co. v. Mount Vernon Assocs.*, 369 S.E.2d 857 (Va. 1988) .............22, 23

*Economopoulos v. Kolaitis*, 528 S.E.2d 714 (Va. 2000) ...................................24

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999)...........................................21

*Electronic Lab. Supply Co. v. Cullen*, 977 F.2d 798 (3d Cir. 1992).................................22

*Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 ........................20, 23
    F. Supp. 2d 385 (E.D. Va. 2002)

*Faison v. Hudson*, 417 S.E.2d 302 (Va. 1992) ....................................................9

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981).............................................8

*Field Auto City v. General Motors Corp.*, 476 F. Supp. 2d 545 (E.D. Va.) ..........18, 19, 20

*Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337 (4th Cir. 2000) ..............18

*Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006).........................................................18

*Huebner v. Alliance Fund Servs., Inc.*, No. 98-243, 1999 U.S. Dist. LEXIS 7465 ..........26
    (D.N.J. May 3, 1999)

*In re Grand Jury Subpoena (Under Seal)*, 920 F.2d 235 (4th Cir. 1990)...................23, 26

*In re Varat Enters., Inc.*, 81 F.3d 1310 (4th Cir. 1996) .......................................9

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303 (4th Cir. 2003)...................20

*Katz v. United States*, 389 U.S. 347 (1967) ....................................................21

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).........................................18, 19, 20, 21

*Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643 (4th Cir. 2005)............................9

*McGuire v. Reilly*, 386 F.3d 45 (1st Cir. 2004) ...............................................21

*Meadow Ltd. P'ship v. Heritage Savings & Loan Ass'n*, 639 F. Supp. 643 .....................28
    (E.D. Va. 1986)

*Montanile v. Botticelli*, No. 1:08CV716-JCC, 2008 U.S. Dist. LEXIS 96294.................29
    (E.D. Va. Nov. 25, 2008)

*Montgomery v. McDaniel*, 628 S.E.2d 529 (Va. 2006) ....................................23

*Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320 (Fed. Cir. 2008) .............15, 16, 17

*Norfolk S. Corp. v. Main Fin. Assocs.*, 57 Va. Cir. 29 (2001) ...........................................28

*Pachaly v. City of Lynchburg*, 696 F. Supp. 180 (W.D. Va. 1988) ............................23, 26

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, __ U.S. __, 129 .........................................6
   S. Ct. 1109 (2009)

*Pittston Co. v. U.S.*, 199 F.3d 694 (4th Cir. 1999) ................................................................9

*Plummer v. Center Psychiatrists, Ltd.*, 476 S.E.2d 172 (Va. 1996) .................................27

*Pueschel v. U.S.*, 369 F.3d 345 (4th Cir. 2004) ....................................................................9

*Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214 (4th Cir. 2006) ........................................3, 7

*Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998) ...............................................................8

*Robinson v. Am. Honda Motor Co.*, 551 F.3d 218 (4th Cir. 2009) ...............................6, 14

*SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593 (E.D. Va. 2005) ..........................27

*Sherman v. Jones*, 258 F. Supp. 2d 440 (E.D. Va. 2003) ..................................................21

*Station # 2, LLC v. Lynch*, 75 Va. Cir. 179 (2008) ............................................................28

*Terry v. Bank of Am., N.A.*, 350 F. Supp. 2d 727 (W.D. Va. 2004)...................................24

*Trull v. Smolka*, No. 3:08CV460-HEH, 2009 U.S. Dist. LEXIS 2901 .............................29
   (E.D. Va. Jan. 14, 2009)

*Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359 (Va. 1956)................................25

*Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002) ....................................................................6

*Weinberger v. Tucker*, 510 F.3d 486 (4th Cir. 2007)....................................................9, 11

*Whitehead v. Allied Signal, Inc.*, No. 98-6305, 1998 U.S. App.........................................26
   LEXIS 31428 (10th Cir. Dec. 16, 1998)

*Winterland Concessions Co. v. Trela*, 735 F.2d 257 (7th Cir. 1984) ...............................21

*Wollstein v. Mary Washington Hosp./Hospice*, No. 3:08CV252-HEH, ........................3, 7
   2008 U.S. Dist. LEXIS 58894 (E.D. Va. Aug. 4, 2008)

*W.T. Grant Co. v. Owens*, 149 Va. 906 (1928).................................................................29

*Yanaki v. Iomed, Inc.*, 415 F.3d 1204 (10th Cir. 2005) ...................................................20

*Zayre of Virginia, Inc. v. Gowdy*, 147 S.E.2d 710 (Va. 1966)...........................................29

**Rules:**

Fed. R. Civ. P. 12(b)(6)............................................................1, 2, 6, 8, 14, 21, 30

Fed. R. Civ. P. 15 .........................................................................................................7

Fed. R. Civ. P. 41(d) ................................................................................................3, 7

**Other Authorities:**

Restatement (Second) of Judgments § 24 cmt. B ..............................................................9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

---

| | |
|---|---|
| RICHARD SNYDER and CATHERINE SNYDER, | |
| *Plaintiffs,* | **Civ. A. No. 08-CV-01270 (GBL-TCB)** |
| v. | |
| GREENBERG TRAURIG, LLP et al. | |
| *Defendants.* | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
GREENBERG TRAURIG DEFENDANTS' MOTION TO DISMISS PURSUANT TO
RULE 12(b)(6) AND REQUEST FOR PAYMENT OF COSTS AND A STAY OF
PROCEEDINGS PURSUANT TO RULE 41(d)**

Eighteen months ago, Judge Cacheris entered a judgment against Catherine Snyder for selling counterfeit Diane von Furstenberg dresses on eBay. When awarding Diane von Furstenberg Studio ("DVF") $100,000 in statutory damages against Mrs. Snyder in the Trademark Enforcement Action,[1] Judge Cacheris observed that "during the court proceedings, Catherine Snyder continually refused to take responsibility for her actions, claiming that she had done nothing wrong." *Diane von Furstenberg Studio v. Snyder*, No. 1:06cv1356 (E.D. Va. Oct. 23, 2007) slip op. at 16 ("*Damages Order*") (attached as Exhibit 1). Plaintiffs' current action is but their latest attempt to deny Mrs. Snyder's culpability for her unlawful behavior and request enormous sums from those who caught Mrs. Snyder red-handed operating her on-line business selling counterfeit goods.

---

[1]   The prior enforcement proceeding is referred to herein as the "Trademark Enforcement Action."

Plaintiffs' "First Amended Complaint" is actually the fourth complaint they have filed against Defendants Greenberg Traurig, Harley Lewin, Steven J. Wadyka, and Janet Hajek (the "GT Defendants").[2]  Here, as in each of their prior complaints, Plaintiffs seek damages against the GT Defendants for their role in executing a court-issued seizure order at Plaintiffs' home. During that search, the GT Defendants seized more than fifty counterfeit DVF dresses and other evidence of Mrs. Snyder's eBay business selling counterfeit DVF dresses.  Ex. 1, *Damages Order* at 6-7 ¶ 14.

In the underlying Trademark Enforcement Action, Plaintiffs never challenged the execution of the seizure order or the validity of DVF's marks.  Through this current suit, Plaintiffs hope to re-litigate the issue of Mrs. Snyder's liability and collaterally challenge the judgment entered against her.[3]  Because Plaintiffs are barred by the doctrine of *res judicata* from litigating those issues here, and because Plaintiffs have not stated any claim upon which relief could be granted, the GT Defendants respectfully request that the Court dismiss all of Plaintiffs' claims with prejudice.  *See* Fed. R. Civ. P. 12(b)(6).  The GT Defendants further request that the

---

[2]    *See* Complaint, *Snyder et al. v. Greenberg Traurig, LLP et al*, No 1:07-cv-00469-LO-BRP (dkt. #1); *id.*, First Amended Complaint (dkt. #29); Complaint, *Snyder et al v. Greenberg Traurig, LLP et al*, No. 1:08-cv-01270-GBL-TCB (dkt. #1).

[3]    By way of example, Plaintiffs allege that "Mrs. Snyder started a legitimate licensed and bonded eBay business . . . ."  First Am. Compl. ¶ 15.  Yet the court in the underlying action already has made a final determination, affirmed on appeal, that Mrs. Snyder's eBay business was not "legitimate," but involved the sale of counterfeit goods.  *See, e.g.*, *Diane von Furstenberg Studio v. Snyder*, No. 1:06cv1356 (E.D. Va. Sept. 10, 2007) slip op. at 9 ("*Trademark Infringement Order*") (attached as Exhibit 2) (finding "there is no dispute that Defendants [the Snyders] used the identical DVF mark on the inferior-quality dresses they sold"); *id.* at 15 (holding Mrs. Snyder liable for trademark infringement); Ex. 1, *Damages Order* at 3-4 ¶ 8 (finding that Mrs. Snyder lied on eBay site about being an "authorized" DVF dress seller and knew items she sold were not made by DVF); *id.* at 5-6 ¶ 12 (finding that two other trademark owners notified Mrs. Snyder that she was not authorized to sell their goods); *id.* at 11 (recognizing "ample evidence . . . to demonstrate that Catherine Snyder was not an innocent infringer").

2

Court order Plaintiffs to pay the costs incurred by the GT Defendants in the previous action and, to the extent any of Plaintiffs' claims are not dismissed based on this motion, that the Court stay this proceeding until such time that Plaintiffs have complied with the order to pay the GT Defendants' costs. *See* Fed. R. Civ. P. 41(d).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.     The Execution of the Seizure Order at Plaintiffs' Home Resulted in Seizure of Evidence of Mrs. Snyder's Sale of Counterfeit Dresses.**

On December 8, 2006, Defendants Harley Lewin, Steven J. Wadyka and Janet Hajek (collectively, "the Attorneys"), accompanied by Herndon, Virginia police officers, executed a lawful *ex parte* seizure order, entered the previous day by Judge Cacheris, at Plaintiffs' home. *See* Ex. 1, *Damages Order*, at 6-7 ¶¶ 13-14.[4]  During the execution of the *Seizure Order* (a copy of which is attached as Exhibit 3), the Attorneys recovered 54 counterfeit DVF dresses; Mrs. Snyder delivered another nine counterfeit dresses to the Attorneys on December 13, 2006.[5] Finally, on December 21, 2006, DVF and the Snyders (who were the defendants in the Trademark Enforcement Action) entered into a stipulated preliminary injunction that continued the restraints imposed by Judge Cacheris in his initial *ex parte Seizure Order*. *Diane von Furstenberg Studio v. Snyder*, No. 1:06cv1356 (E.D. Va. Dec. 21, 2006) ("*Stipulated Preliminary Injunction*") (attached as Exhibit 5).

---

[4]   The Court may take judicial notice of final determinations made in prior hearings. *See Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006); *Wollstein v. Mary Washington Hosp./Hospice*, No. 3:08CV252-HEH, 2008 U.S. Dist. LEXIS 58894, at *5 (E.D. Va. Aug. 4, 2008).

[5]   *Diane von Furstenberg Studio v. Snyder,* No. 1:06cv1356, Decl. of Janet Shih Hajek, (dkt. #19) (Dec. 18, 2006) ¶ 2 (attached as Exhibit 4).  Plaintiffs' computer and all of their original documents were returned to them ten days after the execution of the *Seizure Order*. *Id.* ¶ 5-6.

**B.      The Court Held Mrs. Snyder Liable in the Trademark Enforcement Action.**

On September 10, 2007, the court granted DVF's motion for summary judgment against

Catherine Snyder on its claims for trademark dilution.  *See* Ex. 2, *Trademark Infringement Order*

at 9-10.  The Court held:

> Defendants [the Snyders] were selling items of clothing with the Plaintiff's
> [DVF's] mark in order to capitalize on the popularity of DVF's products and the
> strength of the mark.  Defendant advertised and offered for sale reproductions of
> dresses with the DVF mark.  This Court finds that Plaintiff [DVF] possesses a
> valid trademark and that Defendant's use of the mark created a strong possibility
> of confusion, establishing the elements for summary judgment for trademark
> infringement and unfair competition under the Lanham Act.

*Id.* at 7. [6]

On October 1, 2007, the court held a bench trial to assess damages resulting from Mrs.

Snyder's infringement of DVF's trademark.[7]  Ex. 1, *Damages Order* at 1.  On October 23, 2007,

the court entered an order concluding that Mrs. Snyder infringed DVF's trademark and awarding

DVF $100,000 in statutory damages.  The court found "ample evidence produced at the bench

trial to demonstrate that Catherine Snyder was not an innocent infringer."  *Id.* at 11.  It

determined that Mrs. Snyder purchased counterfeit DVF dresses from Chinese suppliers for $30-

$40 per dress and sold them on eBay for $275-$500 per dress.  *Id.* at 2-3 ¶ 4-6.  When selling the

counterfeit dresses, Mrs. Snyder represented "'authenticity guaranteed' on postings advertising

her items," "despite the fact that she was not an 'authorized' seller of DVF products."  *Id.* at 3-4

¶ 8.  "Not only was Catherine Snyder selling counterfeit goods, but she also passed herself off as

an 'authorized' seller of DVF's products . . . ."  *Id.* at 15.  At trial, Mrs. Snyder testified

---

[6]   Judge Cacheris also recognized that "Defendants [the Snyders] do not deny that the DVF
marks in this action are properly registered," and that they "fail[ed] to introduce evidence to
rebut the presumption created by registration of Plaintiff's mark."  *Id.* at 6.

[7]   Subsequent to the court's award of summary judgment against Mrs. Snyder, DVF voluntarily
dismissed its claim for contributory infringement against Mr. Snyder.

untruthfully and was repeatedly impeached by DVF's counsel. *Id.* at 12.  Judge Cacheris bluntly

determined that he "d[id] not consider [Mrs. Snyder] to be a truthful witness." *Id.*  The court

entered the maximum statutory award of $100,000 in part because Mrs. Snyder "continually

refused to take responsibility for her actions," despite the overwhelming evidence that she had

been knowingly selling counterfeit DVF dresses. *Id.* at 16-17.

**C.      Plaintiffs Have Now Filed Four Separate Complaints Against the GT Defendants.**

On May 10, 2007, Plaintiffs filed suit in this Court alleging violations of 42 U.S.C. §

1983, intentional infliction of emotional harm, and abuse of process against the GT Defendants

allegedly arising out of the execution of the *Seizure Order* at Plaintiffs' home.  On June 25,

2007, the GT Defendants moved to dismiss those claims.  Counsel for the GT Defendants

subsequently provided Plaintiffs with initial disclosures, drafted a joint scheduling order, and

attended a hearing with Plaintiffs before Judge Poretz.  On July 24, 2007, the day before the

parties were to serve discovery pursuant to Judge Poretz's Rule 16(b) Discovery Order,

Plaintiffs, in lieu of serving any discovery, filed an Amended Complaint.  The GT Defendants

served discovery on Plaintiffs on July 25, 2007, pursuant to the Discovery Order.  Shortly

thereafter, on July 30, 2007, Plaintiffs dismissed their claims pursuant to Rule 41.[8]

On December 8, 2008, Plaintiffs filed a third complaint against the GT Defendants (and

others) alleging counts arising out of the execution of the *Seizure Order* at their home.  Plaintiffs

did not serve the third complaint on the GT Defendants.  On February 20, 2009, Plaintiffs filed

their fourth complaint, styled "First Amended Complaint."  On March 23, 2009, the GT

Defendants' counsel offered to waive service, and the parties subsequently filed a consent

---

[8]   *See Snyder et al. v. Greenberg Traurig, LLP et al.*, No 1:07-cv-00469-LO-BRP (dkt. #33).

motion, which the Court granted, setting a single response date for each of the GT Defendants.

Plaintiffs have never sought leave of court or consent of the GT Defendants to file this action.

## STANDARD OF REVIEW

The Supreme Court has recently clarified that, to survive a motion to dismiss, a complaint

must state specific facts supporting the claims asserted.  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A complaint must include "enough facts to state a claim to relief that is

plausible on its face." *Id.*  "[T]he facts alleged 'must be enough to raise a right to relief above

the speculative level.'"  *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009)

(citing *Twombly*, 550 U.S. at 570).  The "'no set of facts'" pleading standard that previously

applied when reviewing a motion to dismiss has been "rejected as too lenient" by the Court.

*Pac. Bell Tel. Co. v. linkLine Commc'ns., Inc.*, __ U.S. __, 129 S. Ct. 1109, 1123 (2009) (citing

*Twombly*, 550 U.S. at 561-63).

A plaintiff who depends on "wholly conclusory statement[s]" does not meet this burden.

*See Twombly*, 550 U.S. at 561 (retiring the standard articulated in *Conley v. Gibson*, 355 U.S. 41

(1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, … a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In addition, when considering a motion to dismiss, the court need not "accept as true

allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v.*

*Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal citation and quotation marks omitted).

"When entertaining a motion to dismiss on the ground of res judicata, a court may take judicial

notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed

issue of fact." *Q Int'l Courier, Inc.*, 441 F.3d at 216 (citing *Andrews v. Daw*, 201 F.3d 521, 524

n.1 (4th Cir. 2000)); *see also Wollstein*, 2008 U.S. Dist. LEXIS 58894, at *5 (taking judicial

notice of order dismissing plaintiff's earlier action and granting defendants' motion to dismiss on

*res judicata* grounds).

## ARGUMENT

**I.    PLAINTIFFS SHOULD PAY THE GT DEFENDANTS' COSTS UNDER RULE 41(d) PRIOR TO BEING PERMITTED TO PROCEED ON ANY COUNTS THAT SURVIVE THIS MOTION TO DISMISS.**

The First Amended Complaint is actually the fourth that Plaintiffs have filed against the

GT Defendants.  By rule, Plaintiffs are permitted to amend their complaint only once as of right

before a responsive pleading is filed.  *See* Fed. R. Civ. P. 15.[9]  Plaintiffs did not obtain leave of

court or the GT Defendants' consent when filing their third complaint on December 8, 2008, or

when filing their fourth complaint on February 20, 2009.  *See id.*

Plaintiffs have filed this current action after their voluntary dismissal of their prior action.

Rule 41(d) provides, "If a plaintiff who previously dismissed an action in any court files an

action based on or including the same claim against the same defendant, the court: (1) may order

the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the

proceedings until the plaintiff has complied."  Fed. R. Civ. P. 41(d).

Rule 41(d) applies to Plaintiffs' current action, which is based on the same occurrence—

the execution of the *Seizure Order* at their home—as their prior action, and which asserts four of

the same claims as the dismissed action.  The GT Defendants incurred substantial costs in the

dismissed action, such as the costs of researching and drafting a motion to dismiss (including

---

[9]    Plaintiffs' original complaint was filed on May 10, 2007, and they amended that complaint on July 24, 2007.  After dismissing their action on July 30, 2007, they filed, but did not serve, a complaint on December 8, 2008.  The current action is an amendment to that third version of Plaintiffs' complaint.

counts that Plaintiffs have now abandoned), drafting a proposed joint discovery plan, filing

initial disclosures, attending a hearing before Judge Poretz, and drafting and serving discovery

requests.  Pursuant to Rule 41, the GT Defendants thus respectfully request that the Court order

Plaintiffs to pay the costs incurred by the GT Defendants in the previous action and, to the extent

any of Plaintiffs' claims are not dismissed based on this motion, that the Court stay this

proceeding until such time that Plaintiffs have complied with the order to pay GT Defendants'

costs.  *See Decl. of Thomas G. Connolly* (listing costs and fees incurred) (attached as Exhibit 6).

## II.    PLAINTIFFS' ACTION SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs' First Amended Complaint fails as a whole and in its component parts.  As

explained below in Section II.A, the doctrine of *res judicata* precludes the pleading as a whole

because every one of the counts could have been raised in the Trademark Enforcement Action.

Moreover, as explained in Section II.B below, the First Amended Complaint suffers from a host

of pleading deficiencies that warrant dismissal under recent Supreme Court precedent.  Finally,

Section II.C below details how each of Plaintiffs' eight counts fails as a matter of law to state a

claim upon which relief can be granted against the GT Defendants.  For these reasons, the Court

should dismiss the First Amended Complaint pursuant to Rule 12(b)(6).

### A.    The Court Should Dismiss All Counts Because They Are Barred by the Doctrine of *Res Judicata*.

The doctrine of *res judicata*, or claim preclusion, bars each of Plaintiffs' claims because

Plaintiffs could have raised them in the Trademark Enforcement Action.  Having failed to raise

them there, Plaintiffs are precluded from presenting them here.

"Under the doctrine of claim preclusion, '[a] final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action.'"  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998) (quoting *Federated*

*Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).  In the Fourth Circuit, the doctrine of *res*

*judicata* applies when there is "(1) a final judgment on the merits in a prior suit; (2) an identity of

the cause of action in both the earlier and the later suit; and (3) an identity of parties or their

privies in the two suits."  *Pueschel v. U.S.*, 369 F.3d 345, 354-55 (4th Cir. 2004); *see also Martin*

*v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 650 (4th Cir. 2005).  Each of these three

conditions is met here.

First, there has been a final judgment in the Trademark Enforcement Action.  A judgment

is final for purposes of *res judicata* unless "'it is being appealed or . . . the time limits fixed for

perfecting the appeal have not expired.'"  *Weinberger v. Tucker*, 510 F.3d 486, 494 (4th Cir.

2007) (quoting *Faison v. Hudson*, 417 S.E.2d 302, 305 (Va. 1992)).  Mrs. Snyder appealed the

district court's judgment in the Trademark Enforcement Action.  On appeal, the Fourth Circuit

affirmed the district court's judgment.  *See Diane Von Furstenberg Studio v. Snyder*, 294 Fed.

Appx. 10 (4th Cir. 2008).  Thus, the judgment in the Trademark Enforcement Action is final.

Second, there is an identity of the cause of action in the two suits.  This factor "does not

turn on whether the claims asserted are identical"; rather, "it turns on whether the suits and the

claims asserted therein 'arise out of the same transaction or series of transactions or the same

core of operative facts.'"  *Pueschel*, 369 F.3d at 355 (quoting *In re Varat Enters., Inc.*, 81 F.3d

1310, 1316 (4th Cir. 1996)).  The word "transaction" in the claim preclusion context refers to "'a

natural grouping or common nucleus of operative facts.'"  *Pittston Co. v. U.S.*, 199 F.3d 694, 704

(4th Cir. 1999) (quoting Restatement (Second) of Judgments § 24 cmt. b).  When assessing this

factor, courts consider the "'relatedness in time, space, origin, or motivation'" of the operative

facts, "'and whether, taken together, they form a convenient unit for trial purposes.'"  *Id.*.

9

There is no question that the Trademark Enforcement Action and the present case arise out of the same "transaction" or "core of operative facts." This case pertains exclusively to the Defendants' alleged conduct related to the execution of the *Seizure Order* at Plaintiffs' residence. The execution of the *Seizure Order* and the scope of the items seized were central components of the Trademark Enforcement Action. The *Seizure Order* was issued in that proceeding, and it was executed to secure the evidence that proved Mrs. Snyder's liability for trademark infringement in that proceeding. Indeed, in the order awarding DVF statutory damages of $100,000, the court described the *Seizure Order*, its execution, and the items seized. *See* Ex. 1, *Damages Order* at 6-7 ¶ 14. In other words, there is no need to engage in a painstaking assessment of the "relatedness in time, space, origin, or motivation" of the operative facts. The operative facts are manifestly the same in the two proceedings, and there is therefore a clear "identity of the cause of action" as required by the second *res judicata* factor.[10]

Third, there is an identity of the parties or their privies in the two suits. With respect to Plaintiffs Richard and Catherine Snyder (defendants in the Trade Enforcement Action) and Defendant DVF (plaintiff in that earlier case), there is an identity of actual parties. With respect to the GT Defendants, there is an identity of privies. In the Fourth Circuit, a party (here, DVF) and the party's attorneys (the GT Defendants) are in privity for purposes of *res judicata* when the later filed suit challenges the propriety of the attorneys' actions in the underlying action. *See*

---

[10] As discussed below, in this suit Plaintiffs even challenge actions *to which they expressly consented* in the Trademark Enforcement Action. *Compare* First Am. Compl. ¶ 46 (challenging the freezing of Mr. Snyders' accounts and Plaintiffs' joint accounts), *with* Ex. 5, *Stipulated Preliminary Injunction* at 4-5 (consenting to restraints imposed on those accounts).

*Weinberger*, 510 F.3d at 492-93.[11]   Since there is an identity of parties or privies with respect to

the Plaintiffs and the GT Defendants, the third *res judicata* factor is satisfied as well.

In sum, each of the *res judicata* factors is present:  there was a final judgment on the

merits in the prior suit; there is an identity of the cause of action in both suits; and there is an

identity of parties or their privies in the two suits.  All of Plaintiffs' claims against the GT

Defendants are thus barred by the doctrine of *res judicata* and ought to be dismissed.

**B.     The First Amended Complaint's Conclusory Allegations of Harm Are Insufficient
To State Grounds for Relief.**

Plaintiffs' First Amended Complaint contains factual assertions relating to the various

Defendants' alleged conduct, but it completely fails to meaningfully differentiate among the

alleged conduct of the various Defendants, to identify sources of liability with clarity, or to

allege how any of the allegations resulted in cognizable harm to the Plaintiffs.  Although

Plaintiffs may contend that the Defendants and the Court should be able to divine the meaning of

the allegations and overcome these core shortcomings, the Supreme Court's recent *Twombly*

decision forecloses that argument.

First, Plaintiffs repeatedly engage in shotgun pleading by requesting that all Defendants

be held liable for allegations regarding the conduct of other or different Defendants.  *See, e.g.,*

First Am. Compl. ¶ 73 (implicating GT Defendants in the cancellation of trademark allegations

by including the irrelevant assertion that GT Defendants damaged Plaintiffs in their execution of

the *Seizure Order*); ¶¶ 84, 119 (implicating GT Defendants in Count Three and Count Seven by

suggesting without supporting allegations that they are liable for Ms. MacFarquhar's entrance

---

[11]   The *Weinberger* decision turned on the application of issue preclusion, which is distinct from
but closely related to claim preclusion.  When undertaking its analysis of privity, the
*Weinberger* court relied on precedent relating to claim preclusion, thus recognizing that the
privity analysis is the same in both contexts.  *See Weinberger*, 510 F.3d at 492-493.

into their home).  Similarly, Plaintiffs routinely allege conduct undertaken by some (but not all) Defendants, and then assert that all Defendants bear liability.  *See id.* ¶¶ 76-82 (alleging that the GT Defendants deprived Plaintiffs of property, yet asserting that the Defendants in general "caused damages"); ¶¶ 83-90 (alleging that the GT Defendants and DVF deprived Plaintiffs of privacy, yet asserting that the Defendants in general "caused damages"); ¶¶ 103-111 (alleging that the GT Defendants converted Plaintiffs' property and/or trespassed on their chattels, yet asserting that they "were damaged by Defendants" in general); ¶¶ 112-122 (alleging that Ms. MacFarquhar trespassed, yet asserting Plaintiffs were damaged by the actions of the Defendants in general).  The most egregious example of Plaintiffs' practice in this regard is their inclusion of Defendant Janet Hajek, who is mentioned by name only when identifying the Defendants, and never again thereafter.  *See id.* ¶¶ 7, 10.  Yet Plaintiffs seek hundreds of thousands of dollars in damages against her "jointly and severally" (*id.* at 23 ("Prayer for Relief")) for all conduct alleged in the complaint.[12]

Second, Plaintiffs fail to identify with sufficient clarity the reason the alleged conduct results in any liability.  For instance, they engage in opportunistic (yet wholly unexplained) pleading by asserting in Counts Two and Three that the Defendants' alleged conduct supports some sort of hybrid *Bivens* / Section 1983 claim, leaving the Defendants and the Court to speculate what kind of claim they actually mean to present.  *See id.* ¶¶ 76-90.  Similarly, Plaintiffs allege in Count Six that Defendants engaged in conversion "and/or" trespass to chattels, again leaving it to the Defendants and the Court to attempt to sort out which claim they intend to allege.  *See id.* ¶¶ 103-111.

---

[12]   This alone provides ample reason for the Court to dismiss the claims against Ms. Hajek in their entirety with prejudice.

And, third, each of Plaintiffs' eight counts ends with a hopelessly conclusory allegation

of harm.  In three counts, Plaintiffs allege only that the Defendants' actions "damaged" them,

without any hint about how the cognizable harm might have been manifested.  *See, e.g.,* First

Am. Compl. ¶ 73 (Count One) ("Richard and Catherine Snyder were damaged by the conduct of

Von Furstenberg and Law Defendants on behalf of Von Furstenberg in their actions in the prior

matter regarding the execution of the warrant."); ¶ 122 (Count Seven) ("The Snyders were

damaged by Defendants' actions."); ¶ 128 (Count Eight) ("Mrs. Snyder was damaged by

MacFarquhar's false imprisonment.").  In the other five counts, they allege in conclusory fashion

that Defendants' conduct humiliated them, caused emotional distress, and led to consequential

and economic damages, but they include no allegations whatsoever about the actual harm—

home foreclosure? lost employment opportunity? medical bills?—that the Defendants allegedly

caused.  *See, e.g., id.* ¶ 82 (Count Two) (alleging that Defendants' conduct caused "consequential

damages …, humiliation and emotional distress"); ¶ 90 (Count Three) ("humiliation and

emotional distress"); ¶ 95 (Count Four) ("consequential damages …, humiliation and emotional

distress"); ¶ 102 (Count Five) (same); ¶ 111 (Count Six) ("economic and emotional damages …

caused by loss of liquidity").[13]  Faced with such conclusory statements, Defendants have no way

to meaningfully rebut the allegations.

These shortcomings doom Plaintiffs' First Amended Complaint in its entirety.  The

Supreme Court has clarified recently that "[f]actual allegations must be enough to raise a right to

relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Complaints that rely on

---

[13]   In Counts Two, Three and Four, Plaintiffs allege that the Defendants "caused damages … including … the costs, including attorneys fees, of bringing this action."  First Am. Compl. ¶¶ 82, 90, 95.  While attorneys' fees can in some limited circumstances constitute one measure of damages, they are not sufficient to demonstrate that a plaintiff suffered harm as a result of a defendant's alleged conduct.  Otherwise, a prospective plaintiff could satisfy the "harm" element of any claim simply by hiring a lawyer to pursue it.

conclusory allegations without asserting the underlying facts are insufficient because they fail to show entitlement to relief under Rule 8(a)(2), and they are therefore subject to dismissal under Rule 12(b)(6). *See id.* In *Twombly*, the Supreme Court held that an antitrust complaint alleging an agreement—but failing to allege facts actually suggesting agreement—merits dismissal. *See id.* at 553-55. The Court explained that the Rule 8(a) pleading standard "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3.

Just as a "conclusory allegation of agreement at some unspecified point" made no showing of the agreement element necessary for the *Twombly* plaintiff to state a claim, *id.* at 557, Plaintiffs' conclusory allegations in this case fundamentally fail to state a claim. *See Robinson*, 551 F.3d at 222 (citing *Twombly*, 550 U.S. at 570) ("[T]he facts alleged 'must be enough to raise a right to relief above the speculative level.'"). Where, as here, a complaint reveals "a plaintiff with a largely groundless claim" that threatens to "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value," the fact that "the allegations …, however true, could not raise a claim of entitlement to relief" is a "basic deficiency [which] should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (citations and internal quotation marks omitted). Plaintiffs' First Amended Complaint therefore ought to be dismissed.

**C.     None of the Individual Counts in the First Amended Complaint States a Claim Against the GT Defendants.**

In addition to the holistic failings detailed above, Plaintiffs' individual claims each independently merit dismissal for the reasons set out below.

1.      **Plaintiffs' "Cancellation of Trademark" Claim (Count One) Fails to State a Claim against the GT Defendants.**

In Count One, Plaintiffs seek to cancel the registration of the DVF mark and seek damages for harm they claim they suffered because of its allegedly fraudulent registration.  First Am. Compl. ¶¶ 62-75.  Count One must be dismissed with respect to the GT Defendants because they are not the holders of the DVF mark and are therefore not proper defendants in a trademark cancellation claim.  Furthermore, Plaintiffs do not allege that the GT Defendants procured the allegedly fraudulent registration, which is a required element of the claim.

The Lanham Act provides that a petition for cancellation may be brought at any time if the trademark's registration was obtained fraudulently.  *See* 15 U.S.C. § 1064.  The Act limits liability, however, to the "person who . . . procure[d] registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means."  15 U.S.C. § 1120.  Plaintiffs do not allege that any of the GT Defendants procured the registration of the DVF mark, falsely or otherwise.  Indeed, Plaintiffs' only allegation with respect to the GT Defendants in this context is that Plaintiffs were "damaged by the conduct of Von Furstenberg and Law Defendants on behalf of Von Furstenberg in their actions in the prior matter *regarding the execution of the warrant*."  First Am. Compl. ¶ 73 (emphasis added).  That allegation is plainly insufficient to support a claim for trademark cancellation or a claim for damages against the GT Defendants.

Furthermore, the doctrine of defendant preclusion (a subcategory of *res judicata*) prevents Plaintiffs from pursuing the cancellation and damages claims here.  Defendant preclusion provides that a defendant in a previous proceeding can be precluded from asserting a claim or defense in a new proceeding if "the claim or defense represents what is essentially a collateral attack on the first judgment."  *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320,

1324 (Fed. Cir. 2008).  Here, Plaintiffs are attempting to collaterally attack the judgment in the

Trademark Enforcement Action by seeking cancellation of the mark and damages for the

allegedly fraudulent registration.

In *Nasalok*, the district court entered an injunction prohibiting Nasalok from using

Nylok's trademark and issued an order stating that Nylok was the proper owner of the

registration and that the trademark was valid and enforceable.  *Id.* at 1322.  Although Nasalok

did not appeal the district court's order, five months later it filed a petition to cancel the

registration with the Trademark Trial and Appeal Board ("TTAB").  *Id.*  The TTAB granted

summary judgment in favor of Nylok, holding that the doctrine of claim preclusion barred

Nasalok's cancellation petition.  *Id.* at 1323.  The Federal Circuit affirmed, holding that an

"attempt[ ] to undermine a previous judgment by asserting in a subsequent action a claim or

defense that was or could have been asserted in the earlier case [is barred by] the rules of

defendant preclusion."  *Id.* at 1328.  Accordingly, the court concluded that "the rules of

defendant preclusion are properly applied to bar Nasalok from asserting [the trademark

invalidity] claim."  *Id.* at 1330.

In the Trademark Enforcement Action, Judge Cacheris entered a final judgment in favor

of DVF on the infringement claim and entered a permanent injunction "enjoining Defendants

[the Snyders] from shipping, delivering, distributing, advertising, offering for sale, or selling

counterfeit DVF products."  Ex. 2, *Trademark Infringement Order* at 15.  The first issue the

court addressed in deciding whether to grant DVF's motion for summary judgment was whether

Plaintiffs had rebutted the strong presumption of validity that registration of a mark provides.

*See id.* at 5-6.  Plaintiffs argued that the mark was invalid because it was not being used in

commerce, but the court found that Plaintiffs failed to produce evidence to support that

argument, holding instead that the mark was valid and protectable.  *See id*.  Plaintiffs never

argued that registration of the mark was fraudulently procured despite the opportunity to do so.

Plaintiffs instead are now impermissibly attempting a collateral challenge to the judgment in the

Trademark Enforcement Action.  Allowing Plaintiffs to pursue the cancellation and damages

claims here would impair DVF's rights as established in the earlier action, including under the

permanent injunction, which is precisely what the *Nasalok* decision prohibits.  Therefore, Count

One should be dismissed as barred by the doctrine of defendant preclusion.

> **2.     Counts Two and Three Fail as a Matter of Law Because the Alleged Private Misuse of a Valid Court Order Does Not Constitute State Action and Is Thus Not Actionable Under *Bivens* or 42 U.S.C. § 1983.**

Plaintiffs have not alleged facts sufficient to sustain either of their two counts under 42

U.S.C. § 1983 or the *Bivens* doctrine.[14]  Count Two alleges that the GT Defendants "went

beyond the scope of the warrant and seized additional property which was not authorized to be

seized by the warrant nor otherwise justifiable."  First Am. Compl. ¶ 77.  Plaintiffs further allege

that the GT Defendants were "acting under color of" state and federal law and "deprived the

Snyders of a constitutional right by depriving the Snyders of property without due process of

law."  *Id*. ¶¶ 78, 79.  Count Three alleges that, by allowing a *New Yorker* reporter to enter their

home and witness the execution of the *Seizure Order*, the GT Defendants violated the Snyders'

Fourth Amendment rights.  *Id*. ¶¶ 84, 87.  The Court should dismiss Plaintiffs' Section 1983 and

---

[14]   The *Bivens* doctrine was established in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), to create a cause of action against federal officers acting under the color of law that is comparable to the Section 1983 cause of action against state officials.  *See, e.g., Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995).  As a result, courts often apply *Bivens* case law to Section 1983 actions, and vice versa.  *See, e.g., Butz v. Economou*, 438 U.S. 478, 504 (1978); *Butts v. Babineau*, 2008 U.S. Dist. LEXIS 107914, at *4-5 (E.D. Va. July 28, 2008). Accordingly, the GT Defendants' arguments for dismissal presented in the text apply regardless of whether Plaintiffs' claims are properly construed as *Bivens* claims or Section 1983 claims.

*Bivens* claims because they have not alleged and could not allege that the GT Defendants are

"state actors" under applicable law.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42

(1982); *Field Auto City v. General Motors Corp.*, 476 F. Supp. 2d 545, 555 (E.D. Va.), *aff'd*, 254

Fed. Appx. 167 (4th Cir. 2007).  Insofar as Plaintiffs have alleged claims under *Bivens*, such

claims should be dismissed because, as a matter of law, there is no *Bivens* remedy against private

actors for allegedly acting under color of *federal* law.  *See Holly v. Scott*, 434 F.3d 287, 292 (4th

Cir. 2006).

Section 1983 imposes liability only for constitutional deprivations perpetrated "under

color of any statute, ordinance, regulation, custom, or usage, of any State."  42 U.S.C. § 1983.

The provision's "'under color of law' requirement is equivalent to the Fourteenth Amendment's

'state action' requirement."  *Field Auto City*, 476 F. Supp. 2d at 554 (citing *Goldstein v. Chestnut*

*Ridge Volunteer Fire Co.*, 218 F.3d 337, 341 (4th Cir. 2000)). The Supreme Court has held that

state action requires two things:

> *both* an alleged constitutional deprivation "caused by the exercise of some right or
> privilege created by the State or by a rule of conduct imposed by the State or by a person
> for whom the State is responsible," *and* that "the party charged with the deprivation must
> be a person who may fairly be said to be a state actor."

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar*, 457 U.S. at 937).  In

other words, a plaintiff must allege and prove both a constitutional harm *and* that the harm was

inflicted by someone whose conduct is "fairly attributable to the State," *id.*; if either requirement

is not met, the claim fails.

Plaintiffs' Section 1983 and *Bivens* claims must fail because their First Amended

Complaint alleges at most only the GT Defendants' *misuse* of the *Seizure Order*, which does not

transform them into state actors subject to liability.  It is black-letter law that a private party's

alleged misuse of a valid court order or state law does not constitute state action.  *See Lugar*, 457

U.S. at 941-42 ("[P]rivate misuse of a state statute does not describe conduct that can be attributed to the State."); *Field Auto City*, 476 F. Supp. 2d at 555 ("Simply put, the misuse by private litigants of a state statute or rule does not constitute state action for purposes of § 1983.").

In *Lugar*, the defendant creditor obtained an *ex parte* prejudgment attachment order against some of the plaintiff's property.  457 U.S. at 924.  The order was executed by the county sheriff but ultimately dismissed due to the defendant's failure to meet the statutory requirements for attachment.  *Id.* at 925.  The plaintiff then filed a Section 1983 action, alleging that the defendant and the state had deprived him of property without due process.  On appeal, the Supreme Court interpreted the first of two Section 1983 counts as "challeng[ing] the state statute as procedurally defective under the Fourteenth Amendment." *Id.* at 941.  That count, held the Court, met the state action requirement because "the procedural scheme created by the statute obviously is the product of state action."  *Id.*  By contrast, the defendant's second Section 1983 count, which "alleged that the deprivation of property resulted from respondents' 'malicious, wanton, willful, opressive [*sic*], [and] unlawful acts,'" did not constitute "state action." *Id.* at 940 (alterations in original).  The allegedly unlawful conduct in that second count "could not be ascribed to any governmental decision" and therefore "challenge[d] only private action." *Id.*  As a result, the Court held there was no cognizable Section 1983 claim based on such alleged private misconduct.

The Eastern District of Virginia recently followed *Lugar* in rejecting a similar claim.  In *Field Auto City*, the defendant creditors suspected that the plaintiff, a car dealership, had been intentionally withholding certain payments that it was required to make under the financing contract between the parties.  476 F. Supp. 2d at 548.  The defendants filed a petition in detinue in state court and obtained an *ex parte* seizure order.  On the day it was entered, the local sheriff

executed the order by seizing the plaintiff's entire vehicle inventory.  *Id.* at 549.  At a subsequent

hearing, the state court ruled that there were no grounds for the seizure, abated the order, and

ordered the vehicles returned.  *Id.*  The plaintiff then filed a Section 1983 action against the

defendants.  While acknowledging that "a private party's joint action with a state official may

sometimes be sufficient [to] render the private party a state actor," the court found that there was

"no basis on which either defendant can fairly be characterized as a state actor." *Id.* at 554, 555.

The court explained that, under *Lugar*, "no state action exists where it is merely alleged that a

private party misused or abused a statute."  *Id.* (citing *Lugar*, 457 U.S. at 941-42).  Per *Lugar*,

"this allegation does not constitute state action and plaintiff's § 1983 claim therefore fails."

*Field Auto City*, 476 F. Supp. 2d at 555.

        Like the plaintiffs in *Lugar* and *Field Auto City*, Plaintiffs here allege that the GT

Defendants harmed them when executing the *Seizure Order* by going beyond the scope of that

order.[15]  Although the private misuse of a lawfully obtained order could potentially constitute

violations of state or other federal laws, such misuse does not constitute *state action* in violation

of the Constitution.  The Supreme Court, this Court, and the courts of many other jurisdictions

have flatly held that the misuse of a valid court order or state law does not transform private

parties into state actors and thus expose them to liability under Section 1983.  *See Yanaki v.

Iomed, Inc.*, 415 F.3d 1204, 1209 (10th Cir. 2005) ("Because Plaintiffs allege nothing more than

---

[15]   Plaintiffs' Complaint includes no allegations challenging the underlying validity of the
*Seizure Order*.  Nor, credibly, could it—particularly given that fewer than two weeks after
the *Seizure Order* was executed, Plaintiffs entered into a stipulation with DVF continuing the
restraints initially imposed by the order.  *See* Ex. 5, *Stipulated Preliminary Injunction* at 2.
Moreover, any such challenge to the order would be barred by the *Noerr-Pennington*
doctrine.  *See IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310-313 (4th Cir.
2003); *Baltimore Scrap Corp. v. The David J. Joseph Co.*, 237 F.3d 394, 398-99 (4th Cir.
2001); *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385,
391-94 (E.D. Va. 2002).

'private misuse' of state laws, their complaint fails to satisfy the first part of the color of law test as announced in *Lugar*.") (affirming the trial court's grant of defendants' Rule 12(b)(6) motion to dismiss plaintiffs' Section 1983 action); *McGuire v. Reilly*, 386 F.3d 45, 60 (1st Cir. 2004) ("For example, there is no state action if what the plaintiff is really aiming at are the acts of private persons that are actually illegal under the statutory scheme, because then the acts do not reflect the policy of the state."); *Benn v. Universal Health Sys.*, 371 F.3d 165, 172 (3d Cir. 2004) (holding a claim that private actors allegedly misused procedures required by state law is "precisely the type of claim that *Lugar* found to be inadequate to establish state action"); *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir. 1984) ("However[,] a private misuse of a statute or procedure, as alleged here, does not describe conduct which is actionable under § 1983 or *Bivens*, despite the participation of state officers in effecting statutory processes. Trela alleges no facts which show that the various state and federal officers were doing more than simply discharging the duties of their offices.") (citation omitted).  Accordingly, the Court should dismiss Plaintiffs' Section 1983 and *Bivens* claims for failure to state a claim upon which relief can be granted.[16]

### 3.    Count Four Fails as a Matter of Law Because the GT Defendants Are Not Subject to a Wrongful Seizure Claim.

Plaintiffs caption Count Four as a claim based on an "Abuse of Trademark Act authority," but their allegations clarify that it is in fact a "wrongful seizure [claim] under 15

---

[16]   Plaintiffs' invasion-of-privacy claim (Count Three) also fails because "there is no general constitutional right to privacy; rather, the 'right to privacy' has been limited to matters of reproduction, contraception, abortion, and marriage, and none of these matters is implicated in the present case." *Edwards v. City of Goldsboro*, 178 F.3d 231, 252 (4th Cir. 1999); *see also Sherman v. Jones*, 258 F. Supp. 2d 440, 442 (E.D. Va. 2003) ("[T]he Supreme Court has carefully avoided creating a broad, fundamental privacy right, noting that the matter of general individual privacy rights is an issue that should be 'left largely to the law of the individual States.'") (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)).

U.S.C. § 1116." First Am. Compl. ¶ 93; *see also id.* ¶ 94 (characterizing the alleged "wrongful

seizure"). The claim fails as a matter of law with respect to the GT Defendants because it is

directed at the wrong party. Wrongful seizure actions may only be brought against "the

*applicant* for the order under which such seizure was made," 15 U.S.C. § 1116(d)(11) (emphasis

added), and attorneys are not considered the "applicants" for wrongful seizure orders. *See*

*Electronic Lab. Supply Co. v. Cullen*, 977 F.2d 798, 804 (3d Cir. 1992) ("*ELSCO*") ("[I]t is

plainly apparent from the context that Congress did not intend for the statutory definition of

'applicant' as legal representative to apply to 15 U.S.C. § 1116(d)(11)."); *see also Clorox Co. v.*

*Inland Empire Wholesale Grocers, Inc.*, 874 F. Supp. 1065, 1070 (C.D. Cal. 1994) ("Counsel are

not considered 'applicants' for a wrongful seizure order pursuant to 15 U.S.C. § 1116(d).").

Because the GT Defendants are not legally subject to a wrongful seizure claim, the Court should

grant the GT Defendants' motion to dismiss Count Four.

### 4. Plaintiffs Have Failed to Allege a Viable Claim for Abuse of Process (Count Five).

Count Five alleges that the GT Defendants engaged in abuse of process by seizing certain

property that fell outside the scope of the *Seizure Order*, and by allowing a reporter to observe

the seizure. *See* First Am. Compl. ¶¶ 97, 99. But a claim for abuse of process requires far more:

"Process is maliciously abused when it is used oppressively, *e.g.*, as a whip to force the payment

of an alleged indebtedness or as a means of extortion." *Donohoe Constr. Co. v. Mount Vernon*

*Assocs.*, 369 S.E.2d 857, 862 (Va. 1988) (internal quotation marks and citations omitted). Mrs.

Snyder—who by virtue of the *Seizure Order* was caught red-handed selling counterfeit DVF

dresses—and Mr. Snyder do not and cannot meet that standard.

To establish an abuse of process claim under Virginia law, the Snyders must plead and

prove both the existence of an ulterior purpose and an act in the use of the process not proper in

the regular prosecution of the proceedings. *Montgomery v. McDaniel*, 628 S.E.2d 529, 531 (Va. 2006).  The Snyders allege that the GT Defendants used the *Seizure Order* for the ulterior purpose of gaining publicity via Ms. MacFarquhar's reporting.  *See* First Am. Compl. ¶ 99.  But that allegation is insufficient because the *Seizure Order* was issued for the purpose of catching Mrs. Snyder selling counterfeit DVR dresses—and it was successfully executed for that purpose as demonstrated by the judgment holding her liable.  *See* Ex. 2, *Trademark Infringement Order* at 15.  As the Supreme Court of Virginia has explained, "[a] legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process."  *Donohoe*, 369 S.E.2d at 862.  The *Seizure Order* was issued and executed precisely to find the evidence of counterfeiting that the GT Defendants *did find* at the Snyders' home.  In other words, it was obtained and executed "not for some ulterior purpose, but rather to protect trademark rights."  *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 391 (E.D. Va. 2002).

Moreover, the alleged seizure of certain items that were ultimately determined not to be relevant to the counterfeiting operation does not constitute the kind of irregular act contemplated by an abuse of process claim.  Courts recognize the need for some flexibility with respect to the execution of a seizure order, and that flexibility does not constitute abuse of process.  "The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved. . . .  There is a *practical margin of flexibility* permitted by the constitutional requirement for particularity in the description of items to be seized."  *In re Grand Jury Subpoena (Under Seal)*, 920 F.2d 235, 239 (4th Cir. 1990) (emphasis added) (internal quotation marks and citation omitted); *see also Pachaly v. City of Lynchburg*, 696 F. Supp. 180, 185 (W.D. Va. 1988) ("The warrant … authorized a search for

books, records, and receipts contained in the WLVA offices…. It is difficult to envision the circumstances where, pursuant to a properly issued warrant, a search for various papers would be so extensive as to exceed the scope of the warrant.").

In short, the *Seizure Order* was issued for a proper purpose, and the GT Defendants executed it in furtherance of that purpose, as demonstrated by the judgment of liability in the earlier proceeding. Since it was unquestionably issued and executed for a proper purpose as a matter of law, an alleged ulterior motive does not result in a viable abuse of process claim. Moreover, even if, as alleged, some of the items seized were ultimately found to be irrelevant to the matter, their seizure does not result in liability for abuse of process because seizure orders must be read with a practical margin of flexibility. Plaintiffs' abuse of process claim should therefore be dismissed.

> **5.      Plaintiffs Fail to State a Claim Against the GT Defendants for Conversion or Trespass to Chattels (Count Six).**

Count Six must be dismissed because Plaintiffs have failed to state a claim for either conversion or trespass to chattels.[17]

> **a.      Conversion.**

Under Virginia law, "'[c]onversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights.'" *Terry v. Bank of Am., N.A.*, 350 F. Supp. 2d 727, 729 (W.D. Va. 2004) (quoting *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. 2000)). To state a claim for conversion, a plaintiff must prove "(i) the ownership or right to possession of the property at the time of the conversion and (ii) the *wrongful* exercise of dominion or control by defendant over

---

[17]   Plaintiffs' claims also should be dismissed for failing to clarify which tort they are actually alleging and on which particular conduct their tort claims are based. *See supra* Section II.B.

the plaintiff's property, thus depriving plaintiff of possession." *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (citing *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956)) (emphasis added).

Count Six fails to state a claim for conversion with respect to any of the property identified in the First Amended Complaint. With respect to the alleged conversion of Mr. Snyder's accounts, ¶¶ 106-10, the claim fails because the attachment of the Snyders' bank accounts was proper. In the Trademark Enforcement Action, the court granted DVF's motion for an order restraining the transfer of Catherine Snyders' assets. *See* Ex. 3, *Seizure Order* at 5 ¶ 11. That order enjoined Mrs. Snyder "*and all persons or entities in concert or participation*" with her from "transferring, disposing of, or secreting any money, stocks, . . . or other assets." *Id.* (emphasis added). Indeed, the Snyders themselves subsequently *consented* to the continuation of the specific restraints on those accounts. *See* Ex. 5, *Stipulated Preliminary Injunction* at 4-5. It was entirely reasonable for the GT Defendants to treat Mr. Snyder, who is Mrs. Snyder's husband and shared a home with her, as a person "in concert or participation" with Mrs. Snyder.[18] Furthermore, Plaintiffs had an opportunity to challenge the freezing of Mr. Snyder's assets while the Trademark Enforcement Action was pending but instead consented to it. Thus, to the extent that Plaintiffs allege that the GT Defendants improperly converted Mr. Snyder's bank accounts, Count Six fails.

---

[18] Judge Cacheris acknowledged that certain facts could support the conclusion that Mr. Snyder was liable for contributory infringement, including that he shared a home with Mrs. Snyder, carried boxes of counterfeit dresses for Mrs. Snyder, and went with Mrs. Snyder to compare the counterfeit dresses with those sold in department stores. Ex. 2, *Trademark Infringement Order* at 11. The court concluded that, "[v]iewing the facts in the light most favorable to the non-moving party, this Court finds that there is a genuine issue of material fact as to whether Mr. Snyder participated in his wife's business to the extent required to consider him to be a contributory infringer." *Id.* at 12. After obtaining summary judgment on the issue of Mrs. Snyder's liability, DVF chose to dismiss voluntarily its contributory infringement claims against Mr. Snyder before trial. *See* Ex. 1, *Damages Order* at 7 ¶ 16.

Count Six also fails to state a claim for conversion of the personal property removed from the Snyders' home.  First, all of the tangible items removed from Plaintiffs' house were removed *pursuant to a valid court order that Plaintiffs never challenged*.  Although some of the items removed may not have been specifically identified in the *Seizure Order*, the execution of a seizure order, like the execution of a search warrant, necessarily involves some flexibility.  *See*, *e.g.*, *In re Grand Jury Subpoena (Under Seal)*, 920 F.2d at 239; *Pachaly*, 696 F. Supp. at 185.

In addition, "it is widely recognized that when a taking is authorized or directed by a court order, conversion will not result."  *Huebner v. Alliance Fund Servs., Inc.*, No. 98-243, 1999 U.S. Dist. LEXIS 7465, at *14 (D.N.J. May 3, 1999); *see also Whitehead v. Allied Signal, Inc.*, No. 98-6305, 1998 U.S. App. LEXIS 31428, at *7-8 (10th Cir. Dec. 16, 1998) ("It is a general rule of tort law that court orders validate actions that would otherwise constitute intentional property torts such as conversion and trespass.") (collecting cases); Restatement (Second) of Torts § 266 ("One is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face.").

For all of the foregoing reasons, Count Six fails to state a claim for conversion, and the GT Defendants respectfully request its dismissal.

### b.    Trespass to Chattels.

"The tort of trespass to chattels is defined in Virginia as the intentional use or intermeddling with the personal property of another without authorization from the property's owner."  *Arias v. Jokers Wild, Inc.*, 73 Va. Cir. 281, 301 (2007).  Money is not a chattel; therefore, Plaintiffs cannot state a claim for trespass to chattels based on the attachment of bank accounts.  *See id.* (finding that the tort of conversion better captured the defendant's conduct of

withdrawing money from a joint bank account and refusing to find in the plaintiffs' favor as to the trespass to chattels claim).

With respect to the personal property that was removed from Plaintiffs' home, as set forth above, the GT Defendants properly removed those items pursuant to a valid search and seizure order.  Furthermore, there is no liability for trespass to chattels unless the chattel is "impaired as to its value, condition, or quality," *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 621 (E.D. Va. 2005), but Plaintiffs do not allege that the GT Defendants caused any damage to the items they removed.  Thus, Count Six fails to state a claim for trespass to chattels, and Defendants respectfully request that it be dismissed.

### 6.    Plaintiffs Have Failed to State a Claim against the GT Defendants for Trespass (Count Seven).

In Count Seven, the Snyders seek to impose liability on the GT Defendants for trespass— yet they admit that the GT Defendants were authorized to be present.  *See* First Am. Compl. ¶¶ 25-26.  Instead, Plaintiffs seem to allege that the GT Defendants are somehow vicariously liable for Ms. MacFarquhar's alleged trespass, *see id.* ¶ 115, but they fail entirely to indicate how.

An employer may be vicariously liable for the torts of its employee if the employee was acting within the scope of his employment at the time the tort was committed.  *Plummer v. Center Psychiatrists, Ltd.*, 476 S.E.2d 172, 173 (Va. 1996).  Here, Plaintiffs allege that Ms. MacFarquhar was employed by the *New Yorker*, not by the GT Defendants.  First Am. Compl. ¶ 10.  Therefore, the GT Defendants cannot be vicariously liable as Ms. MacFarquhar's employer.

Nor do Plaintiffs allege that Ms. MacFarquhar was acting as an agent of the GT Defendants.  Instead, they allege that Ms. MacFarquhar "knew or should have known that the Snyders reasonably believed that everyone present was acting under the apparent authority of the Commonwealth of Virginia and of the United States."  First Am. Compl. ¶ 114.  That sentence,

even taken in the light most favorable to Plaintiffs, cannot be read to suggest that Ms.

MacFarquhar was an agent of the GT Defendants.  Indeed, Plaintiffs admit that "MacFarquhar

was present for no purpose other than as a journalist, and did not in any way assist with

execution of the warrant."  *Id.* ¶ 32.  Therefore, Count Seven fails to state a claim for trespass

against the GT Defendants.

Even if the GT Defendants could be liable vicariously as a matter of law (which they

cannot),[19] Plaintiffs have failed to allege the required elements of the tort of trespass.  Under

Virginia law, trespass is "'an unauthorized entry onto property which results in interference with

the property owner's possessory interest therein.'"  *Station # 2, LLC v. Lynch*, 75 Va. Cir. 179

(2008) (quoting *Cooper v. Horn*, 448 S.E.2d 403, 406 (Va. 1994)).  As noted above, Plaintiffs do

not dispute that Defendants were authorized to enter Plaintiffs' home pursuant to the *Seizure*

*Order*.  In addition, although Plaintiffs allege that "[t]he Snyders were damaged by Defendants'

actions," First Am. Compl. ¶ 122, they fail to allege any damage to their *real property* resulting

from Ms. MacFarquhar's alleged trespass.  *See Norfolk S. Corp. v. Main Fin. Assocs.*, 57 Va. Cir.

29, 34 (2001) (recognizing that trespass requires "some damage, however inconsiderable, to

[plaintiff's] real property").  Here, Plaintiffs have failed to allege that Ms. MacFarquhar or any

other Defendant damaged their property.  *Id.* (recognizing plaintiff must allege injury *and*

---

[19]   In the Amended Complaint that Plaintiffs filed on July 24, 2007, and subsequently dismissed, Plaintiffs alleged a claim against the GT Defendants for "aiding and abetting trespass." *Snyder v. Greenberg Traurig et al.*, 07-CV-469 (filed July 24, 2007) at 12 (alleged as "Count 7").  Virginia has not recognized civil liability in tort for aiding and abetting.  *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181-82 (1994) (acknowledging that Virginia has not recognized aiding and abetting tort liability); *Meadow Ltd. P'ship v. Heritage Savings & Loan Ass'n*, 639 F. Supp. 643, 653-54 (E.D. Va. 1986) (recognizing that aiding and abetting tort liability has not been recognized in Virginia). Plaintiffs' current claim of "trespass" against the GT Defendants appears to be their attempt, by way of imprecise shotgun pleading, to hold the GT Defendants liable on an aiding and abetting theory despite black-letter law rejecting such liability.

*damage* "[i]n order to properly plead a trespass action"). Therefore, Count Seven fails to state a claim for trespass.

### 7. Plaintiffs Have Failed to State a Claim against the GT Defendants for False Imprisonment (Count Eight).

Plaintiffs have failed to state a claim for false imprisonment against the GT Defendants because Count Eight refers only to the alleged actions of Ms. MacFarquhar. *See* First Am. Compl. ¶¶ 123-128. Plaintiffs do not even mention any of the GT Defendants' names in Count Eight. For that reason alone, Count Eight should be dismissed with respect to the GT Defendants.

Moreover, Plaintiffs have not sufficiently alleged the elements of a false imprisonment claim. In Virginia, false imprisonment is "the restraint of a person's liberty without sufficient cause." *Trull v. Smolka*, No. 3:08CV460-HEH, 2009 U.S. Dist. LEXIS 2901, at *11 (E.D. Va. Jan. 14, 2009). False imprisonment requires "'the direct restraint by one person of the physical liberty of another without adequate legal justification.'" *Montanile v. Botticelli*, No. 1:08CV716-JCC, 2008 U.S. Dist. LEXIS 96294, at *12 (E.D. Va. Nov. 25, 2008) (quoting *W.T. Grant Co. v. Owens*, 149 Va. 906, 921 (1928)). Such direct restraint can be accomplished by actual force or threats of force. *W. T. Grant Co.*, 149 Va. at 921. In the absence of actual physical restraint or threats of force, the plaintiff must have "a reasonable apprehension that force will be used unless he willingly submits, and he does submit to the extent he is denied freedom of action." *Zayre of Virginia, Inc. v. Gowdy*, 147 S.E.2d 710, 713 (Va. 1966).

Here, Plaintiffs allege only that Ms. MacFarquhar "blocked Mrs. Snyder's access to the front door when Mrs. Snyder attempted to go outside and *advised* [Mrs. Snyder], 'I wouldn't go outside if I were you.'" First Am. Compl. ¶ 125 (emphasis added). Notably, Plaintiffs do not allege that anyone present on the day of the search used or threatened to use actual force against

them.  Nor do they allege that Ms. MacFarquhar's statement constitutes an express or implied threat of force.  In addition, Plaintiffs have not made any allegations that would support a claim that Mrs. Snyder had a reasonable apprehension that force would be used against her if she tried to leave the home.  Indeed, Plaintiffs have made no allegations that would support a claim that Mrs. Snyder had a reasonable apprehension that any of the GT Defendants or Ms. MacFarquhar would have used force against Mrs. Snyder if she tried to leave.  Therefore, Plaintiffs have failed to state a claim for false imprisonment, and Count Eight should be dismissed with respect to the GT Defendants.

## CONCLUSION

For the foregoing reasons, the GT Defendants move for dismissal of all counts against them pursuant to Rule 12(b)(6).  GT Defendants further request pursuant to Rule 41(d) that the Court order Plaintiffs to pay the costs incurred by the GT Defendants in Plaintiffs' previously filed action and, to the extent any of Plaintiffs' claims are not dismissed based on this motion, that the Court stay this proceeding until such time that Plaintiffs have complied with the order to pay the GT Defendants' costs.

DATED: April 30, 2009

Respectfully submitted,

HARRIS, WILTSHIRE & GRANNIS LLP

_____
/s/

Thomas G. Connolly, Va. Bar No. 29164
Jacinda Lanum, Va. Bar No. 75104
1200 Eighteenth Street, N.W., Suite 1200
Washington, D.C.  20036
Telephone:  (202) 730-1300
Facsimile:   (202) 730-1301
tconnolly@harriswiltshire.com
jlanum@harriswiltshire.com

*Counsel for Defendants Greenberg Traurig, LLP, Harley Lewin, Steven J. Wadyka, and Janet Hajek*

30

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

---

|  |  |
|---|---|
| RICHARD SNYDER and CATHERINE SNYDER, <br><br> *Plaintiffs,* <br><br> v. <br><br> GREENBERG TRAURIG, LLP et al. <br><br> *Defendants.* | **Civ. A. No. 08-CV-01270 (GBL-TCB)** |

---

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of April, 2009, I electronically filed the foregoing Memorandum of Points and Authorities in Support of the Greenberg Traurig Defendants' Motion To Dismiss Pursuant to Rule 12(b)(6) and Request for Payment of Costs and a Stay of Proceedings Pursuant to Rule 41(d), and the accompanying Exhibits, with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jonathan A. Nelson, Esq.
Kenneth T. Cuccinelli, II, Esq.
CUCCINELLI & DAY, PLLC
10560 Main Street, Suite 218
Fairfax, VA  22030

*Counsel for Plaintiffs Richard Snyder and Catherine Snyder*

Lee Levine
John B. O'Keefe
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
1050 17th Street, N.W., Suite 800
Washington, DC 20036-5514

*Counsel for Defendants Larissa MacFarquhar and Advance Magazine Publishers, Inc. (including Conde Nast, Inc.)*

Kevin Bryan Bedell
GREENBERG TRAURIG LLP
1750 Tysons Blvd,12th Floor
McLean, VA 22102

*Counsel for Diane Von Furstenberg Studio, L.P.*

Respectfully submitted,

HARRIS, WILTSHIRE & GRANNIS LLP

<u>          /s/                </u>
Thomas G. Connolly, Va. Bar No. 29164
Jacinda Lanum, Va. Bar No. 75104
1200 Eighteenth Street, N.W., Suite 1200
Washington, D.C.  20036
Telephone:  (202) 730-1300
Facsimile:  (202) 730-1301
tconnolly@harriswiltshire.com
jlanum@harriswiltshire.com

*Counsel for Defendants Greenberg Traurig, LLP,*
*Harley Lewin, Steven J. Wadyka, and Janet Hajek*