UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Richard Snyder, *et al.* | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 1:08cv01270 (GBL-TCB) |
| | ) | |
| Greenberg Traurig, LLP, *et al.* | ) | |
| Defendants | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT GREENBERG
TRAURIG ET AL'S MOTION TO DISMISS**

### Table of Contents

TABLE OF AUTHORITIES                                                                                            iii

FACTUAL BACKGROUND                                                                                        1

STANDARD OF REVIEW                                                                                          2

ARGUMENT                                                                                                              3

I.      Law Defendants' Request for Attorneys Fees Under Rule 41 Is Not Appropriate
Under The Circumstances of This Case.                                                                    3

II.     Plaintiffs' Claims against Law Defendants Have Not Been Previously Litigated,
And So Are Not Barred By *Res Judicata*.                                                                5

III.    The First Amended Complaint Sufficiently States The Facts And Grounds For
Relief.                                                                                                                    13

IV.     Each Individual Claim of the First Amended Complaint is Legally Justified.    16

        A.      Count I – Trademark Cancellation and damages for Fraudulent
Registration.                                                                                                          16

        B.      Counts II and III – § 1983 and *Bivens* claims                                    17

        C.      Count IV – Abuse of Trademark Authority                                          21

        D.      Count V – Abuse of Process                                                              23

        E.      Count VI – conversion and/or trespass to chattels                              25

                i.      Conversion                                                                            26

                ii.     Trespass to Chattels                                                              27

        F.      Trespass and False Imprisonment                                                    29

CONCLUSION                                                                                                        29

**Table of Authorities**

Statutes:

15 U.S.C. § 1116....................................................................................................21-22

15 U.S.C. § 1120...............................................................................................7, 16, 18

42 U.S.C. § 1983............................................................................................. 17, 20, 21


Cases:

*Ada Liss Group v. Sara Lee Branded Apparel*, No. 1:06cv00610, 2008 U.S. Dist. LEXIS 13847 (M.D.N.C. Feb. 22, 2008)........................................................................................3

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982)..................................................................18

*Allied Steel & Tractor Prods., Inc. v. 1st Nat'l Bank of N.Y.*, 54 F.R.D. 256 (N.D. Ohio 1971) ...............................................................................................................15, 16

Alderman v. Chrysler Corp., 480 F.Supp. 600 (E.D. Va. 1979).........................................12

*America Online, Inc. v. LCGM, Inc.*, 46 F.Supp.2d 444 (E.D. Va. 1998)........................29

*Am. Mfrs. Mut. Ins. Co., v. Sullivan*, 526 U.S. 40 (1999) ...........................................17, 20

*Arias v. Jokers Wild, Inc.*, 73 Va. Cir. 281 (2007)........................................................27, 28

*Atlantic Seaboard Corp. v. Van Sterkenberg*, 318 F.2d 455 (4th Cir. 1969)....................15

*Bates v. Devers*, 214 Va. 667 (Va. 1974)............................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................13, 14

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)......................................17, 21

*Camara v. Municipal Ct. of San Francisco*, 387 U.S. 523 (1973)....................................24

*Canon USA, Inc. v. Lease Group Res., Inc.*, No. 1:03cv1192, 2007 U.S. Dist. LEXIS 37710 (E.D. Va. May 7, 2007) ........................................................................................8

*Clorox Co. v. Inland Empire Wholesale Grocers, Inc.*, 874 F. Supp. 1065 (C.D. Cal. 1994) ...............................................................................................................22

*Davis v. USX Corp.*, 819 F.2d 1270 (4th Cir 1987) ........................................................3, 4

*Dean v. WLR Foods, Inc.*, 204 F.R.D. 75, 80 (W.D. Va. 2001)..........................................3

*Deal v. C.E. Nix & Son, Inc.*, 206 Va. 57 (1965)...................................................8

*Diane von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356, 2007 U.S. Dist. LEXIS 66633 (E.D. Va. Sept. 10, 2007) .....................................................................1, 2

*Diane von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356, 2007 U.S. Dist. LEXIS 78915 (E.D. Va. Oct. 23, 2007) ...................................................................6, 8

*Donohoe Constr. Co. v. Mount Vernon Ass'n.*, 369 S.E.2d 857 (Va. 1988) ........23, 24, 25

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ...........................................2

*Electronic Supply Co. v. Cullen*, 977 F.2d 798 (3d Cir. 1992) .......................................22

*Electronic Lab. Supply Co. v. Motorola Corp.*, No. 88-4494, 1989 U.S. Dist. LEXIS 16475 at *5 (E.D. Pa. Sept. 20, 1989) ...............................................................22

Fed. Ins. Co. v. Smith, 144 F.Supp.2d 507 (E.D. Va. 2001) (Ellis, J.)............................28

*Field Auto City, Inc. v. GMC*, 476 F.Supp.2d 545 (E.D. Va. 2007).....................3, 19, 26

*Gen. Elec. Co. v. Speicher*, 681 F.Supp 1337 (N.D. Ind. 1988) ......................................22

*Gen-Probe, Inc. v. AMOCO Corp., Inc.*, 926 F.Supp. 948 (S.D. Cal. 1996) ..................16

*Georgia v. McCollum*, 505 U.S. 42 (1992)......................................................................20

*Glidewell v. Murray-Lacy & Co.*, 98 S.E. 665 (Va. 1919) ............................................25

*Goodman v. PraxAir, Inc.*, 494 F.3d 458 (4th Cir. 2007)...................................................2

*Gray v. Commonwealth*, 356 S.E.2d 157 (Va. 1987)......................................................24

*Gray v. Netherland*, 518 U.S. 152 (1996)........................................................................24

*Haywood v. Guitierez*, No. 1:08cv981, 2009 U.S. Dist. LEXIS 36617 (E.D. Va. Apr. 30, 2009).....................................................................................................................2

*Huebner v. Alliance Fund Servs., Inc.*, No. 98-243, 1999 U.S. Dist. LEXIS 7465 (D.N.J. May 3, 1999) ................................................................................................27

*Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006) .................................................................21

*Jones v. Commonwealth*, 474 S.E.2d 825 (Va. App. 1996) ...........................................24

*Jones v. Poindexter*, 903 F.2d 1006 (4th Cir. 1990) .......................................................19

*Lugar v. Edmonston Oil Co.*, 457 U.S. 922 (1982) ...................................................17, 19

iv

*Montgomery v. McDaniel*, 628 S.E.2d 529 (Va. 2006) ...................................................23

*Mendez v. Bowie*, 118 F.2d 435 (1st Cir. 1941)....................................................8

*Nagel v. ADM Investor Servs., Inc.*, 995 F.Supp. 837 (N.D. Ill. 1998) ..........................16

*Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320 (Fed. Cir. 2008) ..........................5

*Pollard v. Pollard*, No. 08-1402, 2009 U.S. App. LEXIS 8867 (4th Cir. Apr. 27, 2009).............................................................................................13

*Prince-Garrison v. Md. Dept of Health & Mental Hygiene*, No. 08-1090, 2009 U.S. App. LEXIS 5320 (4th Cir. Mar 13, 2009) ..............................................................14

*Pueschel v. U.S.*, 369 F.3d 345 (4th Cir. 2004)....................................................5

*Qatar v. First Am. Bank*, 880 F.Supp. 463 (E.D. Va. 1995) ...........................................28

*Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214 (4th Cir. 2006) ..........................................6

*Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998)....................................................7

*SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593 (E.D. Va. 2005) ...................25, 28

*Soldol v. Cook County*, 506 U.S. 56 (1992) ......................................................18

*Spacone v. Burke*, 300 B.R. 31 (E.D. Cal. 2003)....................................................24

*UAW, Local 5285 v. Gaston Festivals*, 43 F.3d 902 (4th Cir. 1995)...............................19

*United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985 (4th Cir. 1981) ..............25

*United States v. Gray*, 78 F.Supp.2d 524 (E.D. Va. 2001).................................... 24

*United States v. United States Dist. Ct.*, 407 U.S. 297 (1972)...................................18, 20

*Vector Research, Inc. v. Howard & Howard Attys., P.C.*, 76 F.3d 692 (6th Cir. 1996)......................................................................................17, 19, 21

*Weinberger v. Tucker*, 510 F.3d 486 (4th Cir. 2007) ..................................................10-12

*West v. Atkins*, 487 U.S. 42 (1988)..................................................................19

*Williams v. Nathan*, No. 93-90-A, 1993 U.S. Dist. LEXIS 20968 (E.D. Va. Mar. 19, 1993) ..............................................................................................19

*Wilson v. Layne*, 526 U.S. 603 (1999).........................................................1, 24

*Wyatt v. Cole*, 504 U.S. 158 (1992) ...............................................................17

<u>Other:</u>

Fed.R.Civ.P. 8...................................................................................................................16, 25

Fed.R.Civ.P. 12...................................................................................................................*passim*

Fed.R.Civ.P. 13.........................................................................................................................5

Fed.R.Civ.P. 15......................................................................................................................... 5

Fed.R.Civ.P. 15 (Proposed 2009)...........................................................................................16

Fed.R.Civ.P. 41 ....................................................................................................................3, 8

Fed.R.Evid. 201 ........................................................................................................................3

Plaintiffs Richard Snyder and Catherine Snyder hereby oppose the Rule 12(b)(6) Motion to Dismiss filed in this matter by Defendants Greenberg Traurig, LLP, Harley Lewin, Steven Wadyka, and Janet Hajek (collectively, "Law Defendants").

## FACTUAL BACKGROUND

As noted in the Amended Complaint, the Snyders and Diane Von Furstenberg Studio, L.P. ("DVF") have previously engaged in litigation before this Court regarding Catherine Snyder's selling of goods bearing DVF's mark on eBay. (First Am. Compl. ¶ 17.) On December 4, 2006, DVF filed the prior case against Catherine Snyder under seal. (First Am. Compl. ¶ 17.) Upon an *ex parte* hearing before this Court on December 7, 2006, DVF obtained a search and seizure order for Catherine Snyder's residence. (First Am. Compl. ¶ 25.) During the course of the raid, the attorneys for DVF, acting on DVF's behalf, having been authorized to assist in the execution of the search and seizure, took control of the operation, and not only exceeded the scope of the seizure order with regard to the items they seized, but did so in front of a reporter that they brought into the Snyders' home as an independent effort at self-promotion and without the Snyders' permission, in clear violation of the Fourth Amendment. (*See* First Am. Compl. ¶¶ 25, 26, 29, 33, 35-36); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The attorneys for DVF, acting on DVF's behalf, further froze assets in certain bank accounts which were not subject to this Court's asset freeze. (First Am. Compl. ¶ 48.) On December 21, 2006, Richard Snyder was joined as a party, and a stipulated preliminary injunction was entered. Order, Dec. 21, 2006, Docket No. 21, *Diane von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356. On September 10, 2007, this Court entered partial summary judgment, finding liability as to the claim against Catherine Snyder and entering a

permanent injunction, but denying summary judgment as to contributory infringement against Richard Snyder and setting the issue of damages for trial. Mem. Op., Docket No. 79, Order, Docket No. 80, *Diane von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356. Richard Snyder was removed as a defendant when the claims against him were dismissed with prejudice on September 21, 2007. *See* Mot. Voluntarily Dismiss, Docket No. 89; Supplemental Br. Supp., Docket No. 90; Order September 24, 2007, Docket No. 93, *Diane von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356. Upon the hearing on damages, judgment was entered against Catherine Snyder. Order Oct. 23, 2007, Docket No. 106, *Diane von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356. Other particular facts are found in the First Amended Complaint.

## STANDARD OF REVIEW

A motion to dismiss tests the sufficiency of a complaint. *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). In considering the motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Haywood v. Guitierez*, No. 1:08cv981, 2009 U.S. Dist. LEXIS 36617 at *11-12 (E.D. Va. Apr. 30, 2009). All well-pleaded facts in the complaint are taken as true and all reasonable inferences from those facts are drawn in the plaintiffs' favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

On a motion to dismiss, a court may consider facts from the complaint, documents incorporated into the complaint by reference, and matters of which the Court can take judicial notice. *Haywood*, 2009 U.S. Dist. LEXIS at *12. When considering a motion to dismiss on grounds of claim preclusion, a court may take judicial notice,

pursuant to Fed.R.Evid. 201, of the pleadings in a prior matter. *Field Auto City, Inc. v. GMC*, 476 F.Supp.2d 545, 556 n.11. (E.D. Va. 2007).

## ARGUMENT

Law Defendants' request for costs under Rule 41 consists entirely of a request for attorneys' fees, which are not available under the circumstances of this case, and their motion for costs and stay should be denied. The claims in the First Amended Complaint in this matter have not been previously litigated, and are stated with adequate clarity. In addition, the individual Counts are legally sound. Accordingly, Law Defendants' motion to dismiss should be denied.

### I.     Law Defendants' Request for Attorneys Fees Under Rule 41 Is Not Appropriate Under The Circumstances of This Case.

In the practice of this Court, where a matter is dismissed without prejudice under Rule 41(a) and then raised a second time, costs under Rule 41(d) are awarded largely as a matter of course. *Davis v. USX Corp.*, 819 F.2d 1270, 1276 (4th Cir 1987). If a Plaintiff fails to pay these costs after they have been levied, this Court can take actions to see that its order is obeyed, including staying the second action until that party complies. Fed.R.Civ.P. 41(d).

Law Defendants' motion for costs under Rule 41 cites to no legal authority for the proposition that attorneys' fees should be included in costs. (Mem. Supp. Mot. Dismiss at 7-8.) Indeed, the state of the law in the Fourth Circuit is that attorneys' fees will not generally be included in costs, absent a showing of bad faith on the part of the Plaintiff in seeking the dismissal. *Davis*, 819 F.2d at 1276; *see also Ada Liss Group v. Sara Lee Branded Apparel*, No. 1:06cv00610, 2008 U.S. Dist. LEXIS 13847 at *5-6 (M.D.N.C. Feb. 22, 2008), *Dean v. WLR Foods, Inc.*, 204 F.R.D. 75, 80 (W.D. Va. 2001). In the

prior litigation, Plaintiffs were proceeding *pro se* in the complex areas of civil rights and trademark law, and dismissed their claims to seek assistance of counsel rather than face the potential loss of their claims in an imminent motion to dismiss.  *See* Notice of Dismissal, Snyder v. Greenberg Traurig, No. 1:07cv0469, Docket No. 33, (Jul. 30, 2007) (attached as Exhibit 1) ("In light of the Court's recommendation that the Plaintiffs endeavor to retain counsel," plaintiffs dismiss).  Such a basis for dismissal represents an entirely reasonable purpose for dismissing their prior action, and Law Defendants have not alleged in their Rule 41 Motion any basis to conclude that bad faith existed on the part of Plaintiffs in dismissing the prior action.  As Law Defendants have not even alleged any grounds for seeking attorneys' fees from this Court under Rule 41, their motion should be denied as to attorneys' fees.  (*See* Mem. Supp. Mot. Dismiss at 8.)

Further, even as to any remaining costs, that portion of the costs for elements of the first case which are not useless in the current litigation should not be included.  *Davis*, 819 F.2d at 1276.  Law Defendants, however, have alleged no costs other than attorneys' fees, but should they make such an allegation, those alleged costs would still need to be examined to determine whether the result of such expenditures could be used in the present case.[1]  Because attorneys' fees are not appropriate for this motion and because no other costs are alleged, there are no costs for this Court to order Plaintiffs to pay, and Law Defendants' motion as to costs should be denied.  Because there is no appropriate

---

[1] By way of example, Footnotes 15 and 16 to the Memorandum in Support of Defendants' Motion to Dismiss are nearly identical to language contained in the Memorandum in Support of the Motion to Dismiss filed in the prior litigation, indicating the un-surprising fact that there is a great deal of overlapping effort from the prior case.  See Mem. Supp. Mot. Dismiss at 6 n.3, 7 n.5, , Docket No. 21, *Snyder v. Greenberg Traurig, LLP*, No. 1:07-cv-469 (E.D. Va. June 25, 2007) (attached as Exhibit 2).

payment Plaintiffs should be compelled to make, there is no reason to stay these proceedings, and Law Defendants' motion for a stay should also be denied.[2]

## II.     Plaintiffs' Claims against Law Defendants Have Not Been Previously Litigated, and So Are Not Barred By *Res Judicata*

The doctrine of *Res Judicata*, or Claim Preclusion, prevents relitigation of causes of action which have already been decided, and is normally decided under the three part test cited by Law Defendants.   (See Mem. Supp. Mot. Dismiss at 9.)   These three elements are a final judgment, identity of causes of action, and identity of persons. (Id.) (citing *Pueschel v. U.S.*, 369 F.3d 345, 354-55 (4th Cir. 2004)).

However, where, as here, a plaintiff was the defendant in a prior matter, the rules of Defendant Preclusion are applied instead. *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1324 (Fed. Cir. 2008) (applying Defendant Preclusion to a trademark cancellation claimant who was defendant in a prior infringement action). Under Defendant Preclusion, preclusion of a claim only occurs if (1) a claim was a compulsory counterclaim (as under Fed.R.Civ.P. 13) or (2) the current claim amounts to a collateral attack on the prior judgment.  *Id.*

Law Defendants have not and cannot show that civil rights and tort claims arising out of a search and seizure were compulsory counterclaims to an original action for trademark infringement, particularly in light of the fact that the Snyders' cause of action

---

[2] Law Defendants make reference to what they term the "third" and "fourth" complaints.  (Mem. Supp. Mot. Dismiss at 5, 7.)  These are the Complaint and First Amended Complaint in the instant action.  Law Defendants never explain the justification for their numbering scheme, nor do they use this scheme except in the two places cited above.  (*E.g.*, Mem. Supp. Mot. Dismiss at 8, 11.)  Law Defendants also comment that "Plaintiffs did not obtain leave of the Court" before filing the Complaint and First Amended Complaint.  Law  Defendants do not develop this comment, and it is of no legal import to Defendants' motions.  However, Law Defendants do not provide any argument as to how the existence of a prior voluntary dismissal would prevent the normal operation of Rule 15(a)'s "amendment once as a matter of course," much less how a dismissal "without prejudice" could possibly be construed to prevent the filing of a new action with a new complaint.

did not arise until after the prior litigation was underway, i.e., until after the raid occurred.   A counterclaim is compulsory if it arises from the same transaction or occurrence as the original plaintiff's claim.  *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir. 2006).   Courts in the Fourth Circuit make four inquiries in determining whether a counterclaim is compulsory, although no single factor is dispositive, and the inquiries are treated as a guideline: (1) whether the issues of fact and law in the claim and counterclaim are essentially the same; (2) whether res judicata would bar a subsequent suit on the counterclaim absent the compulsory counterclaim rule;[3] (3) whether the same evidence would support or refute the claim and the counterclaim; and (4) whether there is a logical relationship between the claim and the counterclaim.   *Id.*   The events making up the occurrence in DVF's original cause of action involved Catherine Snyder's importation of dresses, the marks on those dresses, and the sale of those dresses over the internet.   See *Diane Von Furstenberg Studio v. Snyder*, No. 1:06cv1356, 2007 U.S. Dist. LEXIS 78915 at *8-10 (E.D. Va. Oct. 23, 2007)   The facts central to the claims against Law Defendants in this matter are Law Defendants' actions on December 8, 2006 in effecting entry into the Snyders' home, seizing items not authorized by the seizure order, and bringing a reporter in the Snyders' home to obtain press coverage for their own benefit.   (First Am. Compl. ¶¶ 77, 84, 92, 97, 105-108, 115.)   Not only are the occurrences neither factually nor legally overlapping in any way, but the present claims did not even arise until a time after DVF's claims had fully ripened, and Law Defendants filed suit on behalf of DVF.   As further evidence of the evidentiary and logical disconnectedness of these events, the judgment in the prior litigation would not have

---

[3] Here, this factor becomes somewhat circular, as the test for res judicata asked whether the counterclaim was compulsory.  Nonetheless, this analysis is done *infra*, pp. 8-13.

differed whether Law Defendants' actions were improper or not.   *See infra*, p.9. Accordingly, Plaintiffs were not required to bring the claims against Law Defendants in the prior matter as counterclaims and Defendant Preclusion does not bar Plaintiffs' claims.

Further, the judgment in the first case found liability against Catherine Snyder for infringing DVF's trademark, and nothing in that finding or the damages judgment or injunction obtained against her would be upset or collaterally attacked by a finding that certain actions of the attorneys in that litigation were tortious or otherwise actionable. Law Defendants have not suggested any way in which the prior judgment will be affected by a judgment against them, nor would it be logical for them to do so.

Plaintiffs' claims against Law Defendants were not compulsory counterclaims to the previous matter and do not constitute a collateral attack on the previous judgment, and so neither part of the Defendant Preclusion test applies to Plaintiffs,  and their claims against Law Defendants should survive.

Law Defendants have also quoted *Rivet v. Regions Bank* to argue that "any claim which *could have* been raised," by the Plaintiffs must have been raised in the prior case or the opportunity is lost.  (Mem. Supp. Mot. Dismiss at 8 (*quoting Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998) (emphasis added))).  This seemingly broadly permissive phrase does not refer to a requirement that all possible claims be litigated in the first case or be lost, rather it is an acknowledgement that after the initial action, certain claims which the rules of claim preclusion required to be joined no longer "could" be raised. *See Bates v. Devers*, 214 Va. 667, 670, n.4 (Va. 1974) ("The barring of a cause of action 'which could have been litigated' is not directed to an unrelated claim which might

permissibly have been joined, but, to a claim which, if tried separate, would constitute claim-splitting," citing *Mendez v. Bowie*, 118 F.2d 435, 440 (1st Cir. 1941), *Deal v. C.E. Nix & Son, Inc.*, 206 Va. 57, 60 (1965).")

Even under the tripartite claim preclusion analysis which is used where a current Plaintiff was also a plaintiff in the previous matter, Plaintiffs' claims would not be precluded.

First, there was a final decision on the merits in the prior case which found that Catherine Snyder violated DVF's trademark rights and was liable for the same. *Diane Von Furstenberg Studio v. Snyder*, No. 1:06cv1356, 2007 U.S. Dist. LEXIS 78915 at.*20-21 (E.D. Va. Oct. 23, 2007).

As to the second part of the analysis, Law Defendants correctly note that claim preclusion requires an identity of the causes of action, turning on whether the two claims arise from a single transaction or occurrence, that is, "a common nucleus of operative facts," related in "time, space, origin, or motivation."  (Mem. Supp. Mot. Dismiss at 9.) The 'single nucleus of fact' analysis is the same as that for the 'same transaction,' as that phrase is used in federal rules.  *Canon USA, Inc. v. Lease Group Res., Inc.*, No. 1:03cv1192, 2007 U.S. Dist. LEXIS 37710 at *13 (E.D. Va. May 7, 2007). The facts of the current action against Law Defendants are wholly separate from the facts of the original action.

In terms of time, the present cause of action only accrued to Plaintiffs after the previous action had been filed, and could not have arisen from the cause of action in the previous suit independent of the actual filing of that suit *and* the abusive manner in which the home invasion was conducted by Law Defendants in that case on behalf of DVF.

While the previous case originated from the sale of merchandise over the internet, the current case originated from the actions of Law Defendants in entering Plaintiffs' home. The events on which the first case was based were wholly different than the events on which the second case is based, and the motivations are completely separate.   The gravamen of the complaint of the plaintiff in the first case, DVF, was commercial activity and enforcement of trademark rights, while the gravamen of the Snyders' complaints in Claims II through VIII of the present action is vindication of their non-commercial, personal rights.[4]   Indeed, the only thing that the two sets of fact can be said to have in common is that certain dresses which were used as evidence in the first case were found in the search during which Law Defendants wrongful actions took place.   DVF's suit was not in any way brought about by the events of the raid, nor did its cause of action in any way rely on the facts of the raid's execution.

Law Defendants point to the fact that the final judgment in the prior matter included a "description" of the events of the raid in the adjudicatory documents, but such mere description is a far cry from the implication they seek to draw, namely, that because such a description is present in the prior case documents, that somehow *any* cause of action related to anything so described would qualify as having been "previously litigated."[5]   Plaintiffs' claims against Law Defendants are not based on an identity of causes of action, and accordingly, claim preclusion is not proper.

---

[4]  Count I is a trademark count not addressed here, and such count does not involve the Law Defendants. Count I is also not a precluded claim.  (*See generally* Opp. DVF Mot. Dismiss at 3-9.)  For a concise delineation of which claims are raised against each defendant, see Opp. DVF Mot. Dismiss at 18. Additionally, Plaintiffs will request the voluntary dismissal of Counts VII and VIII, and those counts will not be further discussed herein.

[5]  By way of example, the mortgage on the Snyders' home was mentioned in the prior litigation, and there was even a ruling by this Court as to whether money could be withdrawn from a frozen account for making a payment on that mortgage.  Mem. Op., Sept. 10, 2007, Docket No. 79, *Diane von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356.  But had any of Law Defendants held that mortgage, no one would seriously

Law Defendants are likewise not correct in their assertion that there is an identity of parties between the prior action and the instant action.  Law Defendants erroneously conflate the two Plaintiffs, treating them as though they were one person. As noted above, Plaintiff Richard Snyder was not a party to the prior action when the matter was filed nor was he a party at the time of the raid, and the claim which was subsequently raised against him had been dismissed with prejudice when the final judgment was entered. *See* Order, Sept. 24, 2007, Docket No. 93, *Diane von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356. Accordingly, Law Defendants' arguments of preclusion are without effect as to Richard Snyder because he was not a party to any final judgment. Even if res judicata were found to apply to any claim Catherine Snyder brings in this action (which it does not), such preclusion would not attach to Richard Snyder.

Furthermore, Law Defendants cannot demonstrate privity with the plaintiff in the prior matter, DVF, for purposes of claim preclusion.  While Law Defendants cite to a case finding privity between an attorney and his client, they ignore the express language of that court that "[w]e do not hold, however, that privity exists with respect to every attorney-client interaction." *Weinberger v. Tucker*, 510 F.3d 486, 493 (4th Cir. 2007). Indeed, such privity can only be found upon an inquiry into the specific facts to determine "whether the interests of one party are so identified with the interests of another *that representation by one party is representation of the other's legal right*." *Id.* at 491 (emphasis added).  *Weinberger* is among the most important cases for this Court to consider on this point; however, it is factually complicated and not easily summarized. Nonetheless, an attempt at summarizing and simplifying is made here.

---

argue that they were precluded from seeking enforcement of the mortgage because it had been mentioned in the prior litigation.

In *Weinberger*, there was a lawyer and his law firm – Tucker and Venable, respectively – and two parties, Weinberger et al.[6] and Volftsun. *Id.* at 489.  Tucker provided legal representation to both parties in a variety of matters over a number of years. *Id.*

In 2001, Tucker represented Volftsun in a loan with Weinberger ("the loan transaction"); however, as part of the discussion, Tucker secured a thoroughly explained waiver of conflicts from the parties ("the waiver"). *Id.*  At some point in the future, there was a lawsuit between the parties related to the loan transaction ("lawsuit 1"). *Id.* at 490. Tucker's law firm represented Volftsun against Weinberger in lawsuit 1. *Id.*

In lawsuit 1, Weinberger filed a motion to disqualify Tucker and his law firm from representing Volftsun in the case due to alleged conflicts of interest. *Id.*  Because of the waiver, Weinberger's motion was denied. *Id.*

In lawsuit 2, Weinberger sued Tucker for legal malpractice related to Tucker's representation of Volftsun in the loan transaction. *Id.*  Tucker moved to dismiss the case, arguing that it was barred by collateral estoppel, and the Court held that collateral estoppel applied and dismissed lawsuit 2, a decision which was upheld on appeal. *Id.* at 490-94.

The Court dismissed lawsuit 2 because issues *explicitly related to attorney Tucker* were necessarily decided as part of the motion to disqualify in lawsuit 1. *Id.* at 491-92. The issues addressed in order to decide the motion to disqualify in lawsuit 1 were essentially the same issues that would have to be determined to find legal malpractice in

---

[6]  Weinberger et al. refers to Weinberger and his wife personally, along with a number of companies with which Weinberger was affiliated.  For purposes of the preclusion discussion, this has been simplified.

lawsuit 2; therefore, the Court said that issue preclusion required the dismissal of lawsuit 2. *Id.*

The holding in *Weinberger* clearly demonstrates that merely representing a party in an earlier action does not bring issue preclusion to bear. *Id.* at 493. Somehow, and in a context relevant to the second lawsuit, a lawyer for a party in a first lawsuit must be explicitly intertwined with the actual litigation of some point of law, as was the case in *Weinberger*. *Id.* There was no point in the case between DVF and Catherine Snyder in which DVF's lawyers were in any way intertwined with any aspect of any ruling of the Court in a manner analogous to *Weinberger*. Insofar as *Weinberger* is a useful analogy in consideration of the claim preclusion arguments in the case at bar, the decision in Weinberger demonstrates clearly that the Law Defendants' motion to dismiss on such basis should be denied.

While *Weinberger* was an issue preclusion case, the identity of interest test does apply to claim preclusion as well, but there is an important difference, inasmuch as the interest for purposes of an entire claim is larger in scope than the interest for purposes of a single issue; the interest for purposes of claim preclusion must be connected with and affected by the judgment. *See Alderman v. Chrysler Corp.*, 480 F.Supp. 600, 607 (E.D. Va. 1979).

Such a close identification of interests between the Law Defendants and DVF simply does not exist for this action. In the prior case, DVF had no interest whatsoever in the interests which Law Defendants have now, namely demonstrating that the manner and scope of Law Defendants' execution of the home invasion was somehow not improper. Indeed, DVF's interest was solely in the finding of liability against Catherine

Snyder, and a finding on the rightness or wrongness of the manner of Law Defendants' execution of the home invasion would have had no bearing one way or the other on the result of that case.  Nor did Law Defendants have any interest, other than the professional aspiration of success in representing a client, in DVF's prior claims for trademark infringement.

Claim Preclusion is not appropriate for the claims against Law Defendants, for while there was a final judgment against one of the Plaintiffs in the prior matter, there is neither an identity of that judgment with the current cause of action, nor is there an identity of parties, as Law Defendants are not in privity with the prior Plaintiff.  Because Plaintiffs' claims against Law Defendants would not be precluded under either the traditional test for Claim Preclusion or the test for Defendant Preclusion, Law Defendants' motion for dismissal under claim preclusion should be denied.

**III.    The First Amended Complaint Sufficiently States the Facts and Grounds for Relief**

Law Defendants note that *Twombly* has raised the standard for pleading to require that the complaint must state sufficient facts to constitute a claim for relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The standard for ruling on a 12(b)(6) motion has not changed, and the complaint is still taken as true, with all reasonable inferences drawn in Plaintiffs' favor.  *See Pollard v. Pollard*, No. 08-1402, 2009 U.S. App. LEXIS 8867 at *2 (4th Cir. Apr. 27, 2009).  The difference is that before *Twombly*, courts would look to whether there was no set of facts under which Plaintiffs could recover (i.e., was it 'possible'?), while now a Court will look at whether it is 'plausible,' under the facts alleged and reasonably implied, and taking those

facts as true, that Plaintiff would be entitled to recovery.  *See Twombly*, 550 U.S. at 557.

The Complaint must be "more than labels and conclusions" and surpass a "formulaic

recitation of the elements of a cause of action."  *Prince-Garrison v. Md. Dep't of Health*

*& Mental Hygene*, No. 08-1090, 2009 U.S. App. LEXIS 5320 at *2 (4th Cir. Mar 13,

2009) (quoting *Twombly*, 550 U.S. at 544).  Plaintiffs' factually rich complaint satisfies

this requirement.

Law Defendants allege several matters generally regarding the sufficiency of the

complaint; matters specific to particular counts are discussed in the sections dealing with

each such Count, *infra* Part IV.

Law Defendants complain that "shotgun pleading," that is, failure to allege which

defendants are complained of in each count, has occurred.  Law Defendants are plainly

laid out as intimately involved in the events complained of in Counts II through VII.  (*See*

First Am. Compl. at ¶¶ 77-80, 84-87, 92, 97-99, 105, 108, 115, 118-119.)  This provides

sufficient notice and states a "plausible" claim against Law Defendants.  *See Twombly*,

550 U.S. at 570.  Further, Plaintiffs have carefully pled the relationships among the

parties, and where there is vicarious liability, have alleged sufficient facts to demonstrate

that liability.  For instance, DVF bears responsibility for actions committed by its agents,

Law Defendants, by virtue of the attorney-client relationship.  (First Am. Compl. ¶¶ 16-

17.)  Law Defendants caused Ms. MacFarquhar to enter the Snyders' home, and bear

responsibility for doing so.  (*Id.* ¶¶ 32-33.)  Finally, the New Yorker, as Ms.

MacFarquhar's employer, is liable for acts of trespass Ms. MacFarquhar committed

within the scope of her employment.  (*Id.* ¶¶ 120-121.)

14

Law Defendants complain further of the absence of Janet Hajek's name in the factual allegations and Counts of the First Amended Complaint.  While a complete failure to mention Defendant Janet Hajek by name other than as a defendant would be grounds for requiring repleading, *see Allied Steel & Tractor Prods., Inc. v. First Nat'l City Bank*, 54 F.R.D. 256, 260 (N.D. Oh. 1971), Ms. Hajek is clearly identified as a member of the "Law Defendants" party.  This grouping together of some, but not all, defendants for ease of reference and brevity of drafting, does not make it any less clear that she is alleged in the First Amended Complaint to have, *inter alia*, been a participant in the home invasion and acted under color of law, (First Am. Compl. ¶¶ 77-80), participated in causing MacFarquhar to enter Plaintiffs' home, (*Id.* ¶¶ 84, 115), seized property not subject to the seizure order, (*Id.* ¶ 92), and used legal process to gain entry to the Snyders' home, (*Id.* ¶ 97). [7]  Accordingly, specific allegations have been made against her, and she should not be dismissed from this action.

Law Defendants further argue that the statements of damage are not sufficiently specific.  However, the amount or type of damage is a factual matter for trial, and not relevant to whether Plaintiffs have stated a cause of action.  *See Atlantic Seaboard Corp. v. Van Sterkenberg*, 318 F.2d 455, 458-459 (4th Cir. 1969) (complaint sufficient on its face because "additional information, going largely to the amount of the damages… was procurable in ordinary discovery.")  Particular details as to damages to Plaintiffs are included in ¶¶ 34, 35, 38, 48, 82 of the First Amended Complaint.  From these and the facts specific to each claim, Law Defendants can draw sufficient facts to answer the complaint.

---

[7]  In fact, Ms. Hajek was a necessary participant as she was the only member of the Virginia Bar and the Bar of this Court to actively participate in the matters underlying this case.  (*See* First Am. Compl. ¶¶ 5-7)

Although a motion to dismiss is an appropriate vehicle for raising a Rule 8 objection, when granting such a motion, courts liberally grant plaintiffs leave to submit an amended complaint clarifying the points objected to within a reasonable time.[8]  *See, e.g.*, *Gen-Probe*, *Inc. v. Amoco Corp.*, 926 F.Supp. 948, 964 (S.D. Cal. 1996) (20 days permitted to file an amended complaint), *Nagel v. Adm. Investor Servs., Inc.*, 995 F.Supp. 837, 839 (N.D. Ill. 1998) (28 days), *Allied Steel & Tractor Prods., Inc.*, 54 F.R.D. at 260 (where Plaintiff had apparently sued wrong defendant, leave to amend granted if discovery against other defendants should reveal defendant's involvement).  Should the Court grant DVF's dismissal motion on Rule 8 grounds, Plaintiffs respectfully request such leave.

**IV.    Each Individual Claim of the First Amended Complaint is Legally Justified.**

*A.    Count I – Trademark Cancellation and damages for Fraudulent Registration.*

Count I is not pled against Law Defendants.  Law Defendants do not have a trademark to cancel, nor are they liable under § 1120 for damages stemming from the fraudulent procurement of a trademark.  Law Defendants' actions are mentioned in Count I as part of a measure of damages, but liability is sought only against DVF.  To the extent Law Defendants seeks to champion DVF's alleged rights under this Count, these arguments have been discussed extensively in Plaintiffs' response to DVF's Motion to Dismiss and are not repeated here.

---

[8] Illustrating how liberally amendment is permitted, the proposed amendment to Rule 15 adopted by the Committee, will allow, beginning in Dec. 2009, one amendment of the complaint to be filed as a matter of course, that is, without leave of the Court, up to 21 days *after* a responsive pleading or a 12(b) motion, so that matters raised in either may be resolved by a plaintiff without any involvement of the Court.  *See* Fed.R.Civ.P. 15 (Proposed 2009).

### B.      Counts II and III – § 1983 and Bivens claims

Law Defendants initially assert confusion over whether the claims are brought under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). The answer, as laid out in the First Amended Complaint, is both.  (*See, e.g.*, First Am. Compl. ¶¶ 78-79, 86-87).   The First Amended Complaint specifically alleges as a fact that Law Defendants were conducting the home invasion in cooperation with the Herndon Police, thereby becoming 'state actors' for § 1983 purposes.  (First Am. Compl. ¶¶ 27, 29); *see Lugar v. Edmonston Oil Co.*, 457 U.S. 922, 937 (1982).  Further, the First Amended Complaint specifically alleges as a fact that Law Defendants were personally acting under the authority of an order from a federal court and represented to the Herndon Police that they were acting under federal authority.  (First Am. Compl. ¶¶ 25, 27-29.) This is sufficient to find Law Defendants to be agents of the federal government, and is the basis for the *Bivens* claims.  *Vector Research, Inc. v. Howard & Howard Attys., P.C.*, 76 F.3d 692, 698 (6th Cir. 1996) (looking to whether party is a federal agent, not whether they are a federal employee).

Law Defendants argue that Counts II and III should be dismissed because Law Defendants are private parties and not state actors.  (Mem. Supp. Mot. Dismiss at 18.) However, private parties are subject to state liability if they act in such a way that their activities are fairly attributable to the state. *Lugar*, 457 U.S. at 937.  In order for the activity to be fairly attributable to the state, there must both be a right or privilege imposed by state and the actions of the private party must be in concert with state persons or otherwise chargeable to the state. *Am. Mfrs. Mut. Ins. Co., v. Sullivan*, 526 U.S. 40, 50 (1999), *Wyatt v. Cole*, 504 U.S. 158, 162 (1992).

Under the first prong, the right imposed by the state here is simple, the right to enter a family's private home, search their possessions, and seize such possessions as are legitimately within the scope of the order granting such authority. This right, though possessed and exercised by states, is so severe an invasion of individuals' rights of privacy and property that it is severely limited and regulated pursuant to the Constitution. See *United States v. United States Dist. Ct.*, 407 U.S. 297, 313 (1972) ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"); *Soldol v. Cook County*, 506 U.S. 56, 61-63 (1992) ("our cases unmistakably hold that the [Fourth] Amendment protects property as well as privacy").  The execution of a search and seizure order is an exercise of a right or privilege imposed by the state – absent the State's coercive power, there was no legal way for Law Defendants (and MacFarquhar) to obtain entry to Plaintiffs' home.

The second prong is likewise met, because Law Defendants procured the presence of the Herndon Police to lend authority to their acts and to invoke the coercive powers of the state in requiring compliance with their instructions, and in fact such coercive powers were invoked.  (*See* First Am. Compl. ¶¶ 29-30.)  Regardless of the Herndon Police's lack of complicity in the extent to which Law Defendants would exceed their powers under the Fourth Amendment and under the seizure order of this Court, Law Defendants' actions in entering the home were clearly in concert with the Herndon Police, and accordingly state action.  *See Adams v. Bain*, 697 F.2d 1213, 1217 (4th Cir. 1982) ("prohibited action taken in concert by public officials and a private entity is state action regardless of whether the ultimate illegal [actions] were [committed] by the private entity or a public official")

As Law Defendants note at length, private actors are not liable under § 1983 for their election to use otherwise valid state legal mechanisms, even if under the circumstances, that election is a misuse of those mechanisms. See *Jones v. Poindexter*, 903 F.2d 1006, 1011 (4th Cir. 1990), *Williams v. Nathan*, No. 93-90-A, 1993 U.S. Dist. LEXIS 20968 at *11-12 (E.D. Va. Mar. 19, 1993). The cases cited to by Law Defendants have a common thread: in all such cases, a private party applied, by ordinary channels, for the application of some legal mechanism, and nothing more. *See*, *e.g.*, *Lugar*, 457 U.S. at 924 (applied for prejudgment attachment), *Field Auto City, Inc.*, 476 F.Supp.2d at 549 (applied for *ex parte* writ of execution). However, Law Defendants' analysis fails to mention that private actors may be held liable for their actions when they go beyond wrongfully applying for state action and actually *perform* governmental functions. *West v. Atkins*, 487 U.S. 42, 57 n.15 () ("If an individual is possessed of state authority and purports to act under that authority, his action is state action."). "One of the paradigmatic means by which a private party becomes subject to section 1983 is through the government's conferral upon that party of what is, at core, sovereign power." *UAW, Local 5285 v. Gaston Festivals*, 43 F.3d 902, 906 (4th Cir. 1995). Actual performance of a state function, *not mere improper request for the state to perform such a function*, does rise to the level of state action. *Vector Research*, 76 F.3d at 698-99.[9] Here, Law Defendants exercised actual state authority, by leading the execution of the home invasion with the Herndon police, and federal authority, by acting under authority of the

---

[9] The events of *Vector Research* are remarkably close to the facts in the case at bar. There, First Technology Safety Systems, Inc. ("FTSS") filed a trademark action against Vector Research, Inc., and obtained an ex parte seizure order, which attorneys for FTSS personally participated in executing. *Vector Research*, 76 F.3d at 695. The order was found to be partially invalid, and Vector Research filed claims under *Bivens* against, *inter alia*, the attorneys. *Id.* The sixth circuit, reversing a 12(b)(6) dismissal of the *Bivens* claims, found that Vector Research's complaint alleged sufficient facts to find that the attorneys, in executing the search and seizure order, were federal agents for Bivens purposes. *Id.* at 698-99.

United States as agents in execution of a federal search and seizure order and by telling the Herndon Police that they represented the federal government.  (First Am. Compl. ¶¶ 28-30.)  As noted above, coercive entry into a private home pursuant to a court order is unmistakably a state power, and one against abuses of which there are extensive protections.  *United States Dist. Ct.*, 407 U.S. at 313.

Whether a private party can be said to be a state actor is analyzed by looking at "(1) the extent to which the actor relies on governmental assistance and benefits; (2) whether the actor is performing a traditional governmental function; and (3) whether the injury caused is aggravated in a unique way by the incidents of governmental authority. *Georgia v. McCollum*, 505 U.S. 42, 51 (1992)..  Here, without government assistance, Law Defendants could not have entered Plaintiffs' home, coercive entry to a private home pursuant to a court order is a traditional governmental function, and the injury is not only uniquely aggravated by the incidents of governmental authority, but arguably there would have been *no* injury without the incidents of governmental authority, as Plaintiffs would have refused entry had Law Defendants appeared at their door armed with only their own private authority.  (*See* Am. Compl. ¶ 29.)  Analyzed differently, where a private party has acted under a state's exercise of coercive power, that private party may be considered a state actor, as there is a "close nexus" between the individual's actions and state action, or the color of law.  *Sullivan*, 526 U.S. at 52. Here, Law Defendants not only acted under a state's coercive power in entering Plaintiffs' home, they were the instruments for that exercise.  Because Law Defendants were state actors exercising a right or privilege of government, they are properly subject to liability under 42 U.S.C. § 1983.

Law Defendants claim that there is no such thing as a *Bivens* action against a private party, citing to the *Holly* decision.  (Mem. Supp. Mot. Dismiss at 18.)  *Holly*, however, does not state that there can be no *Bivens* claim against a private party, but the Court there, after conducting a full analysis for whether the private party's actions were "fairly attributable" to the United States, found that the *operation* of a private correctional facility, as opposed to the fact of incarceration, was not a federal activity subject to *Bivens* liability.  *Holly v. Scott*, 434 F.3d 287, 291-92 (4th Cir. 2006).  In fact, the 4th Circuit Court of Appeals explicitly noted that it did not rule on the question of whether private persons could be subject to *Bivens* liability.  *Id.* at 291.  Because the operative question is whether the individual is a federal agent, an analysis for *Bivens* liability disregards questions of payroll and looks instead, as the term "agent" implies, at whether the person may be said to be acting on behalf of the United States.  *Vector Research*, 76 F.3d at 698.  To hold Law Defendants subject to suit under *Bivens* here would not be an expansion of *Bivens*, but an adherence to its terms; liability under *Bivens* for Law Defendants is proper because, for the same reasons as liability under § 1983 is proper, their actions in the home invasion are such that they were acting as federal agents.

Because Law Defendants' act of executing the home invasion in this matter was an action fairly attributable to the state and to the federal government, Law Defendants were state actors and federal agents, and accordingly, subject to liability under 42 U.S.C. § 1983 and *Bivens*.

C.      *Count IV – Abuse of Trademark Authority*

Plaintiffs have brought an action under 15 U.S.C. § 1116 for wrongful seizure, alleging not that the seizure should never have been authorized, but that Law Defendants,

on behalf of their client DVF, committed wrongful acts in the execution of that seizure, thus making it a wrongful seizure by reason of which Plaintiffs suffered damage. (First Am. Compl. ¶ 93.) A cause of action under § 1116 will normally lie against the trademark holder, not the attorney, who applies for such a seizure order. *Electronic Supply Co. v. Cullen*, 977 F.2d 798, 804 (3d Cir. 1992). In each of the cases cited by Law Defendants regarding this Count, the action was brought for defects in the application for the seizure order, not irregularities caused by the parties in the execution of the seizure. *See Electronic Lab. Supply Co. v. Motorola Corp.*, No. 88-4494, 1989 U.S. Dist. LEXIS 16475 at *5 (E.D. Pa. Sept. 20, 1989), *aff'd* 977 F.2d at 799; *Clorox Co. v. Inland Empire Wholesale Grocers, Inc.*, 874 F. Supp. 1065, 1068 (C.D. Cal. 1994).

However, actions taken in the carrying out of the seizure are also actionable. *Gen. Elec. Co. v. Speicher*, 681 F.Supp 1337, 1341 (N.D. Ind. 1988). Congress deliberately did not define "wrongful seizure" in § 1116. *Id.* at 1341. However, the House Judiciary Committee did note that certain situations were presumed to be wrongful, noting in particular that "a seizure must be considered wrongful to the extent it is executed improperly," "[e]ven if the goods are counterfeit." *Id.* Where, as here, the wrongfulness lies not in the order but in the carrying out of the seizure itself, this liability is still found against the applicant, here DVF.

While this claim against Law Defendants may more properly be a cross-claim which DVF could have brought against Law Defendants for exposing them to this liability, to simplify potential arguments regarding whether, in light of the egregiousness and self-serving nature of Law Defendants' actions, DVF is the proper party to hold ultimately liable for the wrongfulness of the seizure, or whether Law Defendants bear full

or partial responsibility, Law Defendants were included under this Count as defendants as well.

### D.      Count V – Abuse of Process

The Complaint alleges a proper claim for abuse of process on both grounds under which that claim is brought.   Law Defendants allege that the obtaining of the seizure order was proper, and that this somehow ends the discussion.   (Mem. Supp. Mot. Dismiss at 22.)   Under a claim for abuse of process, however, properly obtaining the seizure order is *required* for the tort, and this is where the discussion begins.

An action for abuse of process requires the existence of an ulterior purpose and an act in the use of process not proper in the regular prosecution of proceedings. *Montgomery v. McDaniel*, 628 S.E.2d 529, 531 (Va. 2006).   Abuse of process "lies in the perversion of regularly-issued process to accomplish some ulterior purpose for which the procedure was not intended."   *Donohoe Constr. Co. v. Mount Vernon Ass'n.*, 369 S.E.2d 857, 862 (Va. 1988).   "The gravamen of the tort lies in the abuse or the perversion of the process after it has been issued.   Consequently, it is not necessary to allege or prove that the process was maliciously issued."   *Id.* (internal quotes omitted).

Plaintiffs do not allege that the search and seizure order was improperly obtained. Indeed, it is necessary to this claim that this process have been regularly issued.   *See id.* However, when Law Defendants personally executed the seizure order, they committed several acts not proper in the regular prosecution of proceedings.   One such act was bringing a reporter, acting solely in her role as a reporter, into Plaintiffs' home.   Law Defendants do not even argue that this act is proper or regular.   (*See* Mem. Supp. Mot.

Dismiss at 22-24.)  Indeed, the law is well established that a reporter "ride-along" on the search of a home is improper.[10]  *Wilson v. Layne*, 526 U.S. 603, 614 (1999).

Another improper act was the seizure of a number of items not permitted by the seizure order.  While "[a] search may be as extensive as reasonably required to locate the items described" in the seizure order, *Jones v. Commonwealth*, 474 S.E.2d 825, 827 (Va. App. 1996), in order to justify *seizure* of items not authorized in the seizure order, Law Defendants still have to show is that the items taken were "evidence of [what 1114 permits search to be made for]" which was discovered in plain view in the course of the otherwise lawful search and its incriminating character was immediately apparent.  *See, e.g., United States v. Gray*, 78 F.Supp.2d 524, 528-29 (E.D. Va. 2001) (child pornography discovered when warrant authorized search for evidence of unlawful access to government computers); *see also Gray v. Commonwealth*, 356 S.E.2d 157, 164 (Va. 1987) (vacated on other grounds, *Gray v. Netherland*, 518 U.S. 152 (1996)) (seizure of murder evidence when warrant authorized search and seizure for drugs). The seizure in the instant case included documents such as children's' report cards and unopened credit card advertising mail.  (First Am. Compl. ¶ 36.)  Such documents are not remotely connected with the trademark matter, their lack of connection was obvious on its face, and their seizure was a blatantly improper act in the course of the proceedings.

Law Defendants had at least one ulterior motive for their manner of execution, gaining press coverage and developing their practice.  (First Am. Compl. ¶¶ 32-33, 47.) An ulterior motive need not exist at the time of the issuance of the process.  *Donohoe*

---

[10] Civil search and seizure orders are governed by the Fourth Amendment, just as criminal search or seizure warrants are.  *Spacone v. Burke*, 300 B.R. 31, 36 (E.D. Cal. 2003), *see also Camara v. Municipal Ct. of San Francisco*, 387 U.S. 523, 530 (1973) ("It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.").

*Constr.*, 369 S.E.2d at 862 ("it is not necessary to allege or prove that the process was maliciously issued.").  Even if Law Defendants' motives were perfectly pure at the time the order was requested, by the time they arrived to execute that order, they had developed an ulterior motive.  To the extent Law Defendants attempt to use the phrase "[a] legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process" to support an argument that bad intentions differ from ulterior motives, they misconstrue the purpose of this language. (Mem. Supp. Mot. Dismiss at 23 (quoting *Donohoe Constr.*, 369 S.E.2d at 862).)  This language was originally penned in the *Glidewell* decision, and is used there not to analyze whether a motive was indeed ulterior, but, having already determined that the motive *was* ulterior, ruling that what had been alleged to be abusive behavior was in fact an authorized use of the statute.  *Glidewell v. Murray-Lacy & Co.*, 98 S.E. 665, 668-69 (Va. 1919).  Thus, in the present case, Law Defendants would need to argue that, even though they had an ulterior motive for bringing a reporter into Plaintiffs' home and for blatantly seizing materials far beyond what the order authorized, those ends were in fact in view when Congress authorized the ex parte search and seizure provisions of the Lanham Act. Such a position is simply untenable.

### E.      Count VI – conversion and/or trespass to chattels

As an initial matter, Law Defendants argue that Count VI should be dismissed because it mentions two separate torts both disjunctively and conjunctively.  However, pleading alternative statements in the same or separate claims and pleading alternative or even inconsistent theories for recovery are explicitly permitted by Rule 8.[11]  *See United*

---

[11] And while Plaintiffs are not permitted to plead inconsistent *facts*, Defendants do not raise an allegation of such pleading here.  *See SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 618 (E.D. Va. 2005).

*Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985, 990 (4th Cir. 1981). Law Defendants are clearly notified that Plaintiffs seek to recover under one or both of these theories for Law Defendants' interference with Plaintiffs' rights to use and enjoy certain physical and monetary property. (First Am. Compl. ¶¶ 104-109.) Furthermore, the complaint identifies with particularity the individual items of property which are the subject of these claims. (First Am. Compl. ¶¶ 36, 48, 104, 107.)

i.    Conversion

In attempting to argue that Conversion could not have occurred in this case,[12] Law Defendants attempt to justify their seizure of the bank accounts belonging in whole or in part to Richard Snyder by citing to the language of the ex parte order which enjoined Catherine Snyder or "any person acting in concert with her" from taking certain actions with regard to certain assets. However, Law Defendants leave out two critical words which immediately follow their quoted language, for these persons were only enjoined from secreting the assets "of *Defendants*," and Richard Snyder was not a defendant at that time. Accordingly, while Richard Snyder was certainly enjoined from secreting Catherine Snyder's assets, the order did not authorize the restraint of Richard Snyder's assets.

While Law Defendants attempt to draw significance from the phrase "acting in concert with her," this phrase is a very broad net which even explicitly draws within its gambit obviously innocent parties such as banks. (*See* Order, Mem. Supp. Mot. Dismiss,

---

[12] Law Defendants' citation to facts outside the complaint, here, the orders in the prior case, it is an attempt to establish an affirmative defense to the conversion and not a test of the sufficiency of the complaint. While judicial notice of prior pleadings is appropriate in considering whether res judicata applies, this is not a proper practice where, as here, the argument is on other grounds. *See Field Auto City, Inc. v. GMC*, 476 F.Supp.2d 545, 556 n.11. (E.D. Va. 2007). Judicial notice should not be accorded to the prior orders *for this purpose*. Nonetheless, should this Court not preclude Law Defendants' argument regarding the Conversion claims on these grounds, Plaintiffs answer Law Defendants' argument in this section.

Attach. 3.)   Law Defendants surely do not argue that all of the assets of the bank with which Catherine Snyder had deposited her money were frozen by this order, and the phrase provides no more justification for the freezing of Richard Snyder's assets at that time.

Law Defendants note that Plaintiffs later consented to a preliminary injunction continuing the restraints on their bank accounts.  However, Law Defendants do not offer any authority for their assertion that subsequent consent to *continuation* of a restraint on an account changes the wrongfulness of the initial freezing.  At most, Law Defendants contention can be taken as seeking a finding that Plaintiffs' damages do not continue past the date of the stipulated injunction.  This argument in mitigation of damages is a defense which may be brought at trial, but is not appropriate for a motion to dismiss.  As to the conversion of the tangible personal items taken from the Snyders' home, see the discussion above regarding exceeding a seizure order, *Supra* Part IV.D (Abuse of Process).  While conversion will not result from a taking authorized by a court order, (Mem. Supp. Mot. Dismiss at 26 (citing *Huebner v. Alliance Fund Servs., Inc.*, No. 98-243, 1999 U.S. Dist. LEXIS 7465, at *14 (D.N.J. May 3, 1999))), the items under controversy in the instant case were specifically *not* authorized by the seizure order.

To the extent that Law Defendants' arguments that these actions were not challenged in the prior litigation is an argument for preclusion of the claims as *res judicata*, these were not compulsory counterclaims, and should not be precluded.  *See supra* Part II.

    ii.    Trespass to Chattels

Law Defendants argue that trespass to chattels cannot exist where money is the property trespassed upon, relying on *Arias v. Jokers Wild, Inc.*, 73 Va. Cir. 281, 301 (Fairfax 2007). (Mem. Supp. Mot. Dismiss at 26-27.)   However, Law Defendants characterization of *Joker's Wild* is inconsistent with the holding in that case.   In *Joker's Wild*, plaintiffs sued a former business associate over, *inter alia*, the taking of restaurant equipment and inventory and about $12,000 in a checking account.   *Joker's Wild*, 73 Va. Cir. at 289.   The Fairfax Circuit Court concluded that the equipment and inventory had been converted, but that the money had not been taken, and in any event, money could not be converted.[13]   *Id.* at 301.   The court then looked at Plaintiff's claims for trespass to chattels and concluded that "the tort of conversion better captures [defendants'] misconduct" and declined to find for plaintiffs on that count.   *Id.*   However, the court having just determined that the taking of the money was *not* misconduct, this statement as to which tort better fits the particular facts of that case can only be taken to apply to the particular manner in which the equipment and inventory was seized, and not to the taking of the money generally.   *See id.*   Accordingly, contrary to Law Defendants' assertion, this case does not stand for the proposition that money cannot be the subject of a suit for trespass to chattels, and Law Defendants do not assert any additional authority for this allegation.   Plaintiffs' claim, as applied to their bank accounts, states a cause of action for trespass to chattels.

---

[13] The conclusion that money cannot be converted is erroneous, as "it is well established that money… may be converted." *Fed. Ins. Co. v. Smith*, 144 F.Supp.2d 507, 518 n.25 (E.D. Va. 2001) (Ellis, J.); *see also Qatar v. First Am. Bank*, 880 F.Supp. 463, 467 n.4 (E.D. Va. 1995) (in action for conversion of money in bank account or alternatively for assumpsit, because "the two torts are quite similar… the Court will refer to the action as one simply for conversion.").   Defendants do not quote this language from *Joker's Wild*, nor argue that it is correct.

Law Defendants note that, to prove a claim for trespass to chattels, the property must be "impaired as to value, condition, or quality."  (Mem. Supp. Mot. Dismiss at 27 (quoting *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 621 (E.D. Va. 2005)).)  For purposes of this tort, however, unavailability of the chattel for plaintiff's use is a sufficient impairment to at least state a claim.  *America Online, Inc. v. LCGM, Inc.*, 46 F.Supp.2d 444, 452 (E.D. Va. 1998).  The First Amended Complaint does in fact allege that Law Defendants removed a number of items from the Snyders' home and took possession of those items.  (First Am. Compl. ¶¶ 35, 36, 44.)  It can be reasonably implied from this fact that these items were unavailable for plaintiffs' use while Law Defendants had these objects in their possession.  Further, Plaintiffs allege that Law Defendants seized a number of unopened items of mail and then opened them.  (First Am. Compl. ¶¶ 36(k), 38.)  This is an impairment of the mail's condition.[14]  Under either of these factual allegations, Plaintiffs have stated a claim for Trespass to Chattels, and the question becomes merely one of what value to attach to that impairment, a damages question to be resolved at the trial of this matter.

### F.      *Trespass and False Imprisonment*

Counts VII and VIII will shortly be the subject of a motion for voluntary dismissal as to all parties, and accordingly are not addressed herein.

### Conclusion

For the foregoing reasons, Law Defendants' motion for costs, motion for stay, and motion to dismiss should be denied.  Should a motion to dismiss be granted as to any part of this matter, Plaintiffs request leave to amend within a reasonable time.

---

[14] Further, should the opening of mail not be found to be a sufficient impairment, Law Defendants also improperly seized a number of credit cards.  (First Am. Compl. ¶ 36(i).)

Respectfully submitted,
Richard Snyder and Catherine Snyder,
By Counsel

_____/s/_____
Jonathan A. Nelson
Virginia bar number 75247
Attorney for Richard and Catherine Snyder.
CUCCINELLI & DAY, PLLC
10560 Main Street, Suite 218
Fairfax, Virginia 22030
Phone: (703) 268-5600
Fax: (703) 268-5602
jnelson@cuccinelliday.com

Kenneth T. Cuccinelli, II
Virginia bar number 39490
Attorney for Richard and Catherine Snyder.
CUCCINELLI & DAY, PLLC
10560 Main Street, Suite 218
Fairfax, Virginia 22030
Phone: (703) 268-5600
Fax: (703) 268-5602
ktc@cuccinelliday.com

## **Certificate of Service**

I hereby certify that on this 11th day of May, 2009, I will electronically file the

foregoing with the Clerk of Court using the Court's CM/ECF system, which will then

send a notification of such filing (NEF) to the following:

Kevin B. Bedell
*Counsel for Defendant Diane*
*Von Furstenberg Studio, L.P.*
GREENBERG TRAURIG, LLP

1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102
Phone: (703) 749-1339
Fax: (703) 714-8339
bedellk@gtlaw.com

Thomas G. Connolly
Jacinda Lanum
HARRIS, WILTSHIRE & GRANNIS LLP
*Counsel for Defendants Greenberg Traurig, LLP, Harley Lewin, Steven J.*
*Wadyka, and Janet Hajek*
1200 Eighteenth Street, N.W., Suite 1200
Washington, D.C. 20036
Telephone: (202) 730-1300
Facsimile: (202) 730-1301
tconnolly@harriswiltshire.com
jlanum@harriswiltshire.com

Lee Levine
John B. O'Keefe
*Counsel for Defendants Larissa MacFarquhar and Advance Magazine*
*Publishers, Inc. (including Conde Nast, Inc.)*
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
1050 17th Street, N.W., Suite 800
Washington, DC 20036-5514
Telephone: (202) 508-1100
Facsimile: (202) 861-9888
Email: jokeefe@lskslaw.com


_____/s/_____
Jonathan A. Nelson
Virginia bar number 75247
Attorney for Richard and Catherine Snyder.
CUCCINELLI & DAY, PLLC
10560 Main Street, Suite 218
Fairfax, Virginia 22030
Phone: (703) 268-5600
Fax: (703) 268-5602
jnelson@cuccinelliday.com