**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| RICHARD SNYDER and CATHERINE SNYDER, <br><br> *Plaintiffs*, <br><br> v. <br><br> GREENBERG TRAURIG, LLP et al. <br><br> *Defendants*. | **Civ. A. No. 08-CV-01270 (GBL-TCB)** |

**REPLY MEMORANDUM OF GREENBERG TRAURIG LLP, HARLEY LEWIN,
STEVEN WADYKA, AND JANET HAJEK IN SUPPORT OF THEIR MOTION TO
DISMISS AND REQUEST FOR PAYMENT OF COSTS AND A
STAY OF PROCEEDINGS**

HARRIS, WILTSHIRE & GRANNIS LLP

Thomas G. Connolly, Va. Bar No. 29164
Jacinda Lanum, Va. Bar No. 75104
1200 Eighteenth Street, N.W., Suite 1200
Washington, D.C.  20036
Telephone:  (202) 730-1300
Facsimile:   (202) 730-1301
tconnolly@harriswiltshire.com
jlanum@harriswiltshire.com

*Counsel for Defendants Greenberg Traurig LLP,
Harley Lewin, Steven J. Wadyka, and Janet Hajek*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

**I.    THE COURT SHOULD AWARD ATTORNEYS' FEES TO DEFENDANTS PURSUANT TO RULE 41(d).** ..................................................................... 1

**II.   PLAINTIFFS CLAIMS ARE BARRED UNDER THE DOCTRINE OF *RES JUDICATA.*** ............................................................................................... 4

**III.  PLAINTIFFS' COMPLAINT IS INSUFFICIENTLY PLED.** ....................... 8

**IV.   PLAINTIFFS' REMAINING INDIVIDUAL CLAIMS FAIL AS A MATTER OF LAW.** ....................................................................................... 11

   **A.   Count One Should be Dismissed With Respect to the GT Defendants.** ..................... 11

   **B.   Counts Two and Three Fail to State a Claim under Section 1983 or *Bivens*.** ........... 11

   **C.   Plaintiffs Have Failed to State a Claim for Wrongful Seizure.** ................................... 14

   **D.   Plaintiffs Have Failed to State a Claim for Abuse of Process.** ................................... 15

   **E.   Count Six Fails to State a Claim for Conversion or Trespass to Chattels.** ................ 17

      **1.   Conversion** ........................................................................................... 17

      **2.   Trespass to Chattels** ............................................................................. 18

# TABLE OF AUTHORITIES

**Cases:**

*Aloha Airlines, Inc. v. Mesa Air Group, Inc.*, No. 07cv00007 DAE-KSC, .........................3
2007 U.S. Dist. LEXIS 97678 (D. Hi. July 20, 2007)

*Am. Cyanamid Co. v. Capuano*, 381 F.3d 6 (1st Cir. 2004)................................................7

*America Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444 (E.D. Va. 1998)......................19

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)  ...............................................................8, 9

*Beltronics USA, Inc. v. Midwest Inventory Distrib. LLC,*....................................................5
522 F.Supp.2d 1318 (D. Kan. 2007)

*Brown v. Felsen*, 442 U.S. 127 (U.S. 1979)........................................................................5

*Burshan v.  National Union Fire Ins. Co. of Pittsburgh, PA*, 805 So.2d 835...................19
(Fla. Dist. Ct. App. 2001)

*Cadle Co. v. Beury,* 242 F.R.D. 695 (S.D. Ga. 2007).....................................................1, 3

*Canon U.S.A., Inc. v. Lease Group Res., Inc.*, 2007 U.S. Dist. LEXIS 37710 ...................7
(E.D. Va. May 21, 2007)

*Christian Broadcasting Network, Inc. v. Robertson,* No. 2:05cv558, ................................2
2007 U.S. Dist. Lexis 9808 (E.D. Va. Feb. 13, 2007)

*Clorox Co. v. Inland Empire Wholesale Grocers*, 874 F. Supp. 1065...............................15
(C.D. Cal. 1994)

*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)...............................................12

*Davis v. USX Corp.*, 819 F.2d 1270 (4th Cir. 1987)...........................................................2

*DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999) ............................................................12

*Dee-K Enters., Inc. v. Heveafil SDN. BHD.,* 177 F.R.D. 351.............................................2
(E.D. Va. 1998)

*Donohoe Constr. Co. v. Mount Vernon Assocs.*, 369 S.E.2d 857...............................16, 17
(Va. 1988)

*Eager v. Kain,* 158 F. Supp. 222 (E.D. Tenn. 1957)...........................................................1

*Electronic Laboratory Supply Co. v. Cullen*, 977 F.2d 798 ...............................................15
(3d Cir. 1992)

*Esquivel v. Arau,* 913 F. Supp. 1382 (C.D. Cal. 1996)........................................................3

*Evans v. Safeway Stores, Inc.,* 623 F.2d 121 (8th Cir. 1980) ...............................................1

*Field Auto City, Inc. v. GMC*, 476 F. Supp. 2d 545 (E.D. Va. 2007) ......................7, 13, 14

*Gen. Elec. Co. v. Speicher*, 681 F. Supp. 1337 (N.D. Ind. 1988) .........................14, 15, 16

*Glidewell v. Murray-Lacy & Co.*, 98 S.E. 665 (Va. 1919) .................................................17

*In re Grand Jury Subpoena (Under Seal)*, 920 F.2d 235 (4th Cir. 1990).........................16

*Hessel v. O'Hearn*, 977 F.2d 299 (7th Cir. 1992)...............................................................17

*Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006)......................................................................11

*Inventory Locator Serv., LLC v. Partsbase, Inc*., No. 02-2695 Ma/V,............................19
2005 U.S. Dist. LEXIS 32680 (W.D. Tenn. Sept. 6, 2005)

*Katen v. Katen*, No. 5:97cv275br(2), 1998 U.S. Dist. LEXIS 11592.............................1, 3
(E.D.N.C. Mar. 4, 1998)

*Kenny v. Quigg*, 820 F.2d 665 (4th Cir. 1987) ................................................................6, 7

*Loubier v. Modern Acoustics, Inc.,* 178 F.R.D. 17 (D. Conn. 1998)..............................1, 3

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).....................................................13, 14

*Meekins v. United Transp. Union*, 946 F.2d 1054 (4th Cir. 1991) .................................4, 8

*Pittston Co. v. United States*, 199 F.3d 694 (4th Cir. 1999) .................................................5

*Pueschel v. United States*, 369 F.3d 345 (4th Cir. 2004).................................................4, 5

*Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214 (4th Cir. 2006)..............................................5

*SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593 (E.D. Va. 2005) ....................19, 20

*Shoup v. Bell & Howell Co.*, 872 F.2d 1178 (4th Cir. 1989)................................................8

*Slaey v. Adams*, No. 1:08-cv-354, 2008 U.S. Dist. LEXIS 103903...................................17
(E.D. Va. Dec. 23, 2008)

*Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, ...........................................11
76 F.3d 692 (6th Cir. 1996)

*Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002) .................................................................17

*Weinberger v. Tucker*, 510 F.3d 486 (4th Cir. 2007)........................................................7

*Whitehead v. Miller Brewing Co.,* 126 F.R.D. 581 (M.D. Ga. 1989)..................................1

*Winterland Concessions Co. v. Trela*, 735 F.2d 257 (7th Cir. 1984) ...................11, 13, 14

*Zucker v. Katz,* No. 87civ7595(SWK), 1990 U.S. Dist. LEXIS 1748............................1, 4
(S.D.N.Y. Feb. 23, 1990)

**Rules:**

Fed. R. Civ. P. 41(d) ....................................................................................................1,2,3

**Other:**

H.R.No. 98-997, 98th Cong., 2d Session 25-26 ................................................................15

Joint Statement on Trademark Counterfeiting Legislation,........................................ 15, 16
Senate Comm. on the Judiciary, S.R. 98-526, 98th Cong., 2d Sess. 34-628

Restatement (Second) of Judgments § 87 (1982) ...............................................................8

Restatement (Second) of Torts § 218..............................................................................20

Plaintiffs' claims are barred by *res judicata*, were insufficiently pled, and do not state any claim upon which relief could be granted. As explained below, Plaintiffs' Opposition fails to refute any of the GT Defendants' arguments. Plaintiffs also fail to present good reason why the Court should not condition Plaintiffs' right to continue this proceeding on the payment of certain fees and costs expended by the GT Defendants in Plaintiffs' prior action. Thus, for the reasons presented in the GT Defendants' Memorandum in Support of their Motion to Dismiss and as further explained below, Plaintiffs' First Amended Complaint should be dismissed in its entirety with prejudice.

## I.  THE COURT SHOULD AWARD ATTORNEYS' FEES TO DEFENDANTS PURSUANT TO RULE 41(d).

Rule 41(d) allows the Court to condition Plaintiffs' pursuit of their claims on payment of certain costs incurred by the GT Defendants in the earlier suit.[1] Authority recognizing that courts possess the discretion to award attorneys' fees as part of "costs" under Rule 41(d) is legion.[2] Even those cases decided under Rule 41(a)(2) on which Plaintiffs rely recognize that attorneys' fees may be awarded under Rule 41. *See* Opp'n at 3-5.

Plaintiffs assert that, in the Fourth Circuit, attorneys' fees will not generally be included in costs absent a showing of bad faith on the plaintiff's part in seeking the dismissal. *See* Opp'n

---

[1] Plaintiffs do not (and could not) dispute that their re-filed action is "based on or including the same claim against the same defendant" as in their previously dismissed actions. *See* Fed. R. Civ. P. 41(d).

[2] *See Evans v. Safeway Stores, Inc.,* 623 F.2d 121, 121 (8th Cir. 1980); *Katen v. Katen*, No. 5:97cv275br(2), 1998 U.S. Dist. LEXIS 11592 (E.D.N.C. Mar. 4, 1998); *Loubier v. Modern Acoustics, Inc.*, 178 F.R.D. 17, 22 (D. Conn. 1998) (recognizing that "courts have generally allowed the recovery of attorney's fees as part of costs"); *Zucker v. Katz,* No. 87civ7595 (SWK), 1990 U.S. Dist. LEXIS 1748 (S.D.N.Y. Feb. 23, 1990); *Whitehead v. Miller Brewing Co.,* 126 F.R.D. 581 (M.D. Ga. 1989); *Eager v. Kain,* 158 F. Supp. 222, 223 (E.D. Tenn. 1957). One court, after analyzing the 1993 amendments to the Federal Rules of Civil Procedure, concluded that those amendments have made clear that "attorney's fees are considered by the Rule drafters to be a part of 'costs.'" *Cadle Co. v. Beury*, 242 F.R.D. 695, 698-99 (S.D. Ga. 2007).

at 3.  But none of the three cases on which Plaintiffs rely were decided under Rule 41(d).  In

*Davis v. USX Corp.*, 819 F.2d 1270 (4th Cir. 1987), the court, after recognizing that "[t]he

purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly

prejudiced," *id.* at 1273, examined whether it was proper for a court to condition a Rule 41(a)(2)

dismissal on (among other things) the payment of attorneys' fees.  *Id.* at 1276.  Although the

court declined to condition the dismissal on the payment of fees, its holding was explicitly made

"under the facts of this case."  *Id.* at 1276.

     *Davis* did not establish any specific test for the award of attorneys' fees under Rule

41(a)(2) (let alone Rule 41(d)), and it did not hold that, in determining the potential prejudice to

defendants, a court must find *both* that the attorneys' fees were expended on work that could not

be carried over to the subsequent litigation *and* that plaintiffs moved for dismissal in bad faith.

Indeed, as recognized in this district, *Davis* never held that "bad faith" was a prerequisite to

conditioning a Rule 41(a)(2) dismissal upon payment of attorneys' fees.  *See Christian Broad.*

*Network, Inc. v. Busch*, No. 2:05cv558, 2007 U.S. Dist. LEXIS 9808, at *5 (E.D. Va. Feb. 13,

2007) (conditioning voluntary dismissal under Rule 41(a)(2) on payment of any attorneys' fees,

without any determination of bad faith); *see also Dee-K Enters., Inc. v. Heveafil SDN. BHD.*, 177

F.R.D. 351, 356 (E.D. Va. 1998) (recognizing that court may impose conditions as the court

deems proper, including the payment of attorneys' fees, as part of a voluntary dismissal).

Ignoring the contrary *Christian Broadcasting* precedent, Plaintiffs rely on cases from other

districts in an effort to fashion a "bad faith" requirement under Rule 41(a)(2) for the payment of

attorneys' fees.  *See* Opp'n at 3-4.  Because those cases are inconsistent with this district's

precedent, and because they represent an unsupported extension of the fact-specific holding of

*Davis*, they do not justify the application of a "bad faith" requirement in this action.[3]

More fundamentally, the issue here is an award of costs under Rule 41(d), not Rule

41(a)(2).  Cases decided under the relevant rule, including cases within this circuit post-dating

*Davis*, recognize a court's discretion to award fees for work that cannot be carried over to the

new action, without applying any "bad faith" requirement.[4]  For instance, in *Katen*, the court

awarded attorneys' fees under Rule 41(d) for work in the prior action that could not be used in

the subsequent action.[5]  1998 U.S. Dist. LEXIS 11592 at *6.  In so doing, *Katen* imposed no

"bad-faith" requirement.

The GT Defendants incurred fees on work in the prior action that cannot be applied to the

new action.  Although Plaintiffs point to two *footnotes* that were largely the same in the GT

---

[3]   But there are ample grounds to find that Plaintiffs' Rule 41 dismissal was in bad faith.  First, Plaintiffs' dismissal was made shortly after they had missed the Court's deadline for serving discovery requests.  Second, Plaintiffs used the dismissal as a tool to invent new allegations in support of their claims.  To cite one glaring example:  In the Complaint and Amended Complaint filed in the initial action, Plaintiffs did not make the baseless allegation that Defendant Steve Wadyka "flashed a badge" at anyone, *see* Compl., *Snyder et al. v. Greenberg Traurig, LLP et al*, No 1:07-cv-00469-LO-BRP (dkt. #1); *id.*, First Am. Compl. (dkt. #29); only in the subsequent action (filed two years after the search) did Plaintiffs first claim that Mr. Wadyka flashed a badge at Plaintiff Richard Snyder when executing the search order.  *See* Compl., *Snyder et al v. Greenberg Traurig, LLP et al*, No. 1:08-cv-01270-GBL-TCB (dkt. #1) ¶ 19.  Little more than two months later, *Plaintiffs changed their story again*, and in their fourth complaint—the now-operative "First Amended Complaint"—Plaintiffs allege "[u]pon information and belief" that Mr. Wadyka flashed a badge not at Mr. Snyder, but to the Herndon police when obtaining their assistance in executing the search order.  First Am. Compl. ¶ 28.  It defies credulity to believe that Plaintiffs' constantly changing allegations have basis in fact or that they were revised for any reason other than to provide a lifeline to their legal claims.

[4]   *See, e.g.*, *Aloha Airlines, Inc. v. Mesa Air Group, Inc*., No. 07cv00007 DAE-KSC, 2007 U.S. Dist. LEXIS 97678, *10-*11 (D. Hi. July 20, 2007); *Cadle Co*., 242 F.R.D. at 699-700; *Loubier*, 178 F.R.D. at 22; *Esquivel v. Arau,* 913 F. Supp. 1382, 1388 (C.D. Cal. 1996).

[5]   The *Katen* court described the issue of awarding fees under Rule 41(d) one of "first impression in this circuit," 1998 U.S. Dist. LEXIS 11592, at *2, notwithstanding that *Davis* was decided a decade earlier, thereby acknowledging that the case-specific *Davis* holding under Rule 41(a)(2) did not govern the analysis under Rule 41(d), which is here at issue.

Defendants' motions to dismiss the prior action and the instant action, *see* Opp'n at 4 n.1, Plaintiffs ignore their complete abandonment of one of the four original legal counts asserted in their previous action.  The GT Defendants drafted discovery plans in the prior action that are now moot, served discovery requests that, due to substantial change in and expansion of the counts asserted by Plaintiffs, must now be revised, and attended an initial conference and court hearing that will have no application to the current action.  *See Zucker*, 1990 U.S. Dist. LEXIS 1748 at *6-8 (requiring payment for defendants' time at court hearings in dismissed action).

If the Court so requests, the GT Defendants will submit an affidavit detailing and itemizing the fees expended in the prior action that cannot be carried over to the present action in further support of its request that the Court order Plaintiffs to pay such fees prior to proceeding on this, their fourth Complaint arising out of the GT Defendants' execution of the *Seizure Order*.

## II.   PLAINTIFFS CLAIMS ARE BARRED UNDER THE DOCTRINE OF *RES JUDICATA*.

Without citation to any controlling precedent, Plaintiffs urge the Court to disregard the claim preclusion doctrine, arguing that it should not apply because Plaintiffs were the defendants in the Trademark Enforcement Action.  *See* Opp'n at 5.  Plaintiffs' argument runs headlong into the governing law, however, because the Fourth Circuit has repeatedly and consistently held that the doctrine applies to all *parties* in the earlier case (and their privies), irrespective of whether they were plaintiffs or defendants.  *See, e.g., Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) ("Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the *parties* or their privies from relitigating issues that were or could have been raised in that action.'") (citations omitted) (emphasis added); *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) ("[N]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to,

recovery that were previously available to the *parties*, regardless of whether they were asserted or determined in the prior proceeding.") (citations omitted) (emphasis added).  By applying the preclusive effect to all *parties* in a previous litigation, "res judicata … encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Pueschel*, 369 F.3d at 354 (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (U.S. 1979)).[6]

Moreover, the Fourth Circuit has explained that three conditions must be satisfied in order for *res judicata* to apply, and none of them relates to claimant's status as plaintiff in the earlier litigation.  "[T]here must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits."  *Pueschel*, 369 F.3d at 354-355.  As the GT Defendants have demonstrated in their motion, each of these conditions exists here.  *See* Mem. Supp. at 8-11.

First, as the Plaintiffs concede, there has been a final judgment on the merits.  *See* Mem. Supp. at 9; Opp'n at 8.  Second, there is an identity of the causes of action, because both pertain to the same "natural grouping . . . of operative facts."  *Pittston Co. v. United States*, 199 F.3d

---

[6] Even if claim preclusion did not apply, Plaintiffs' claims would be barred under the alternative standard Plaintiffs urge, for two independent reasons:  their claims were compulsory counterclaims in the previous suit, and the claims amount to a collateral attack on the prior judgment.  *See* Opp'n at 5.  *First*, Plaintiffs' claims were compulsory counterclaims in the Trademark Enforcement Action because (1) the key underlying facts pertaining to DVF's claims and Plaintiffs' claims overlap substantially, (2) *res judicata* would bar Plaintiffs' claims for the reasons identified in the text, (3) the same evidence (*i.e.,* the execution of the *Seizure Order* and the goods seized) pertains to DVF's claims in the earlier suit and Plaintiffs' claims here, and (4) there is a clear and direct relationship between DVF's claims and Plaintiffs' claims.  *See Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir. 2006) (identifying four guidelines for assessing whether counterclaims were compulsory).  *Second*, Plaintiffs' claims against the GT Defendants constitute collateral attacks on the prior judgment.  Had Plaintiffs presented and prevailed on these claims in the earlier case, they would have undermined the evidence necessary to support DVF's infringement claims.  *See Beltronics USA, Inc. v. Midwest Inventory Distrib. LLC*, 522 F. Supp. 2d 1318, 1324 n.3 (D. Kan. 2007) (considering whether to suppress evidence obtained in a search that exceeded the scope of a seizure, but ultimately electing not to decide the issue "at this procedural juncture").

694, 704 (4th Cir. 1999) (citation omitted); *see also* Mem. Supp. at 9.  Plaintiffs dispute this,

contending that the pertinent facts are "wholly separate" because DVF's infringement claims in

the earlier suit arose before the seizure had even occurred.  *See* Opp'n at 8-9.  But assessing the

identity of the causes of action does not turn on the time at which various claims became

actionable.[7]  It turns instead on whether there is a "natural grouping . . . of operative facts,"

*Pittston*, 199 F.3d at 704, and here, there most certainly is.  DVF's claims arose from Mrs.

Snyder's on-line sale of counterfeit dresses; DVF applied for the *Seizure Order* to gather

evidence to support those claims; and Judge Cacheris relied on that evidence when finding Mrs.

Snyder liable.  In other words, the same facts and evidence Plaintiffs place at issue here

underscored the judgment in the Trademark Enforcement Action.  Since the *Seizure Order*'s

execution and the items seized are central to both proceedings, the second *res judicata* condition

exists.  *See* Mem. Supp. at 10.

     Third, there is an identity of parties or their privies.  *See id.* at 10-11.  Plaintiffs dispute

this with respect to Mr. Snyder and the GT Defendants.  Plaintiffs assert (without any citation to

supporting authority) that *res judicata* does not apply to Mr. Snyder because the claims against

him were dismissed voluntarily with prejudice.  *See* Opp'n at 2, 10.  The law holds otherwise:  A

voluntary dismissal with prejudice—the manner in which Mr. Snyder was dismissed in the

Trademark Enforcement Action—"is a valid final judgment on the merits" that has *res judicata*

---

[7]  *See Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir. 1987) (*res judicata* may apply unless the
later-raised claims had not arisen at the time of judgment in the earlier proceeding and "could not
possibly have been sued upon in the previous case").  The Snyders' claims arose long before
judgment in the Trademark Enforcement Action.  Indeed, their claims (if meritorious at all) arose
on the date of the seizure, December 8, 2006—more than a month before Catherine Snyder filed
her first pleading in the Trademark Enforcement Action, *see* Answer, *Diane von Furstenberg
Studio v. Snyder*, No. 1:06cv1356 (E.D. Va. Jan. 8, 2007), and more than nine months before
Judge Cacheris granted summary judgment in DVF's favor.  *See Trademark Infringement Order*
(attached as Ex. 2 to the GT Defendant's Mem. Supp.).

effect.  *Kenny*, 820 F.2d at 669; *see also Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 17 (1st Cir.

2004) ("[A] voluntary dismissal with prejudice is ordinarily deemed a final judgment that

satisfies the res judicata criterion.") (citation omitted).  Accordingly, the preclusive effect of *res*

*judicata* applies to Mr. Snyder.[8]

      With respect to the GT Defendants, Plaintiffs engage in a laborious effort to obscure the

legal principle enunciated in *Weinberger v. Tucker* by running in circles around the facts of that

case.  *See* Opp'n at 10-13.  But the *Weinberger* rule of law is clear: A party and its attorney are

in privity for purposes of *res judicata* when the claims in the current proceeding turn on the

conduct of the attorney in the earlier suit.  *See Weinberger*, 510 F.3d at 492; Mem. Supp. at 10-

11.  This rule applies here, notwithstanding Plaintiffs' effort to stir up factual distinctions,

because Plaintiffs' claims depend on the GT Defendants' conduct while representing DVF in the

prior case.  Moreover, Plaintiffs have conceded privity by asserting that the GT Defendants acted

as DVF's agents in the earlier case and during the execution of the *Seizure Order*.  *See* Opp'n at

14; *see also Field Auto City, Inc. v. GMC*, 476 F. Supp. 2d 545, 558 n.15 (E.D. Va. 2007)

(holding that a party's agent is its privy under Virginia law for purposes of *res judicata*); *Canon*

*U.S.A., Inc. v. Lease Group Res., Inc.*, No. 1:03cv1192 (JCC), 2007 U.S. Dist. LEXIS 37710, at

*17 n.4 (E.D. Va. May 21, 2007) (same).

---

[8]  Even if Mr. Snyder were not considered a party, he is clearly Mrs. Snyder's privy.  *See, e.g.,*
*Weinberger v. Tucker*, 510 F.3d 486, 492 (4th Cir. 2007) ("The concept of privity requires an
alignment of interests and not an exact identity of parties.").  As Judge Cacheris held in the
Trademark Enforcement Action, Mr. Snyder shared a home with Mrs. Snyder, carried boxes of
counterfeit dresses for Mrs. Snyder, and went with Mrs. Snyder to compare the counterfeit
dresses with those sold in department stores.  *See, e.g.,* Mem. Supp. at 25 & n.18; *Trademark*
*Infringement Order* at 11 (attached as Ex. 2 to the GT Defendant's Motion to Dismiss).  Indeed,
as Plaintiffs are quick to acknowledge, Mr. and Mrs. Snyder also shared bank accounts that were
subject to the asset freeze agreed to by the parties and ordered by the court in that Action.  *See*
Opp'n at 26-27; Mem. Supp. at 25.

Finally, Plaintiffs contend that *res judicata* bars only claims that were compulsory in the earlier suit, yet for support they rely on Virginia's claim preclusion law. *See* Opp'n at 7-8. The preclusive effect in this case stems from an earlier federal proceeding, and "federal, not state, law determines the preclusive effect of a prior federal judgment." *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir. 1989).[9] The federal law of claim preclusion clearly bars all claims that were available, not merely those that were compulsory. *See Brown*, 442 U.S. at 131 ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."); *see also Meekins*, 946 F.2d at 1057. All of Plaintiffs' claims are thus barred.

## III.   PLAINTIFFS' COMPLAINT IS INSUFFICIENTLY PLED.

Plaintiffs acknowledge that *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), requires dismissal of complaints that rely on "labels and conclusions" and "formulaic recitation of the elements of a cause of action." Opp'n at 14. They then assert that their complaint meets this standard, but in their effort to explain how, they only highlight its shortcomings.

Plaintiffs completely misconstrue the GT Defendants' argument related to their conclusory assertions of harm. Although they argue that "the amount or type of damage is a factual matter for trial," Opp'n at 15, this misapprehends the GT Defendants' argument. The GT Defendants have not (yet) challenged the *veracity* of Plaintiffs' allegations of harm; that is a factual issue for trial. Rather, the GT Defendants argue that Plaintiffs have failed to plead *any facts at all* relating to the harm they purported to suffer; instead, as the GT Defendants explained, Plaintiffs made conclusory allegations of harm that fail to meet the requirements of *Twombly*. *See* Mem. Supp. at 13; *Twombly*, 550 U.S. at 555. Although Plaintiffs identify five allegations

---

[9]  *See also* Restatement (Second) of Judgments § 87 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.").

that they argue assert their harm sufficiently to meet the *Twombly* standard, *see* Opp'n at 15

(identifying ¶¶ 34, 35, 38, 48 and 82), most of those paragraphs make no allegation of harm or

only a few conclusory statements of harm of the type *Twombly* forecloses.[10]

Plaintiffs effectively concede the GT Defendants' argument that the First Amended

Complaint inappropriately seeks damages from *all* Defendants, even when the allegations are

directed only at particular Defendants' conduct.  *See* Mem. Supp. at 11-12.  Rather than directly

address that failing, Plaintiffs use their legal brief inappropriately to shore up shortcomings in the

complaint's factual allegations—by purporting to provide the factual nexus through which DVF

can bear liability for the GT Defendants' alleged conduct, the GT Defendants can be derivatively

liable for Ms. MacFarquhar's presence in the Plaintiffs' home, and the New Yorker can be liable

for Ms. MacFarquhar's alleged conduct.  *See* Opp'n at 14.  An opposition brief is no place for

new allegations.  More importantly, Plaintiffs never address the core problem:  the First

Amended Complaint seeks damages in a hopelessly conclusory and befuddling fashion from *all*

Defendants even when the alleged conduct pertains only to certain Defendants or the theories of

liability that apply only to some, but not all, Defendants.

For instance, in Count One, which seeks damages for cancellation of trademark, Plaintiffs

allege that they "were damaged by the conduct of [DVF] and Law Defendants on behalf of

---

[10]  Paragraph 34 alleges only that Ms. MacFarquhar advised Mrs. Snyder not to go outside; it is silent on how this may have caused harm or what that harm may have been.  Moreover, Plaintiffs have since dismissed their claim alleging false imprisonment by Ms. MacFarquhar.  Paragraph 35 alleges that the GT Defendants removed items that were not covered by the *Seizure Order*, but is silent on how this resulted in harm or what sort of harm it caused.  Paragraph 38 alleges that the GT Defendants caused unopened mail to be opened, but again lacks any discussion of how this caused harm.  Paragraph 48 discusses harm that resulted from freezing accounts held by Mr. Snyder or jointly by Plaintiffs, but Plaintiffs consented to these account freezes in the *Stipulated Preliminary Injunction*.  *See* Mem. Supp. at 25 & Ex. 5 at 4-5.  Accordingly, this allegation of harm cannot support a cause of action.  Finally, Paragraph 82 states in conclusory fashion that the Defendants caused "consequential damages . . . , humiliation and emotional distress," but it is silent on what actual harm (*e.g.* medical bills, lost job, anything else) occurred.

[DVF] in their actions in the prior matter." First Am. Compl. ¶ 73. In their opposition to DVF's motion to dismiss, Plaintiffs are silent with respect to the allegation as it relates to the GT Defendants, stating that "Count I is against DVF alone." Opp'n DVF Mot. Dismiss at 18 (filed May 4, 2009). Plaintiffs admit that Count One provides no theory under which the GT Defendants could be liable, but they argue (without authority) that the GT Defendants are included in Count One "as part of a measure of damages." *See* Opp'n at 16. In other words, Plaintiffs admit that they have thrown the GT Defendants into the mix in Count One solely for damages, despite the admitted absence of any direct legal liability.

Plaintiffs' efforts to preserve Count Four (Abuse of Trademark Authority) are even more egregious. The allegations in that claim consist of conclusory statements related to the alleged conduct of only the GT Defendants. *See* First Am. Compl., ¶¶ 91-95. In response to the GT Defendants' argument that only the applicant, not the applicant's lawyers, can bear liability, *see* Mem. Supp. at 21-22, Plaintiffs concede they have no claim against the GT Defendants, stating that the claim "may more properly be a cross-claim which DVF could have brought against Law Defendants." *See* Opp'n at 22-23. They then contend that they brought this claim "to simplify potential arguments" about who might actually bear liability. *Id.* In other words, faced with the fact that Plaintiffs cannot state a claim against the applicant's *lawyers* for wrongful seizure, Plaintiffs argue that their hopelessly imprecise GT-focused allegations should be understood to support a damage award in their favor on a virtually unfathomable claim against whichever party may actually bear liability. Such scattershot pleadings and muddled liability theories are insufficient, and they justify dismissal of Plaintiffs' claims.[11]

---

[11]  Plaintiffs request leave to amend their complaint yet again if the Court finds that their allegations are insufficient. *See* Opp'n at 16. The GT Defendants respectfully request that

## IV.    PLAINTIFFS' REMAINING INDIVIDUAL CLAIMS FAIL AS A MATTER OF LAW.[12]

### A.    Count One Should be Dismissed With Respect to the GT Defendants.

Plaintiffs admit that Count One "is not pled against Law Defendants."  Opp'n at 16; *see also* Opp'n DVF Mot. Dismiss at 18 (filed May 4, 2009) ("Count I is against DVF alone.").  The GT Defendants respectfully request that the Court dismiss Count One with prejudice with respect to the GT Defendants.

### B.    Counts Two and Three Fail to State a Claim under Section 1983 or *Bivens*.

<u>*Bivens* claims:</u>  Plaintiffs cite no authority for the proposition that a private party acts under color of federal law simply by executing a seizure order properly issued by a federal court.[13]  Nor do Plaintiffs cite any authority for the proposition that private parties are subject to *Bivens* liability simply because they "flashed a badge" or indicated that they are U.S. law enforcement officials.[14]  *See* First Am. Compl. ¶ 28.  Thus, the GT Defendants' conduct in executing the seizure order is not "fairly attributable" to the federal government.  *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir. 1984); *see also Holly v. Scott*, 434 F.3d 287, 291 (4th Cir. 2006) (declining to extend *Bivens* to impute liability to employees of wholly

---

Plaintiffs not be granted a *fifth* attempt to state claim against the GT Defendants.  *See* Mem. Supp. at 5.

[12]  Plaintiffs have informed the GT Defendants that they will file a motion, to which the GT Defendants have consented, to voluntarily dismiss Count Seven (trespass) and Count Eight (false imprisonment) as to all parties.  Therefore, the GT Defendants do not address those counts here.

[13]  Plaintiffs' reliance on *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692 (6th Cir. 1996) is misplaced.  In that case, the attorneys executed a seizure order issued under the copyright laws in concert with United States Marshals.  *See id.* at 695.  Here, Plaintiffs do not and could not allege that any federal officers took part in the search and seizure.

[14]  *See supra*, at 3 n.3 (demonstrating how the changing allegations across the four complaints filed by Plaintiffs against the GT Defendants should specifically call into question the fabricated badge flashing story).

private corporation with which the federal government had a contractual relationship).[15]

Plaintiffs' *Bivens* claims should be dismissed with prejudice as to the GT Defendants.

Section 1983 claims:  The Fourth Circuit has held that private parties bear liability under section 1983 only in limited circumstances:

> the person charged [under section 1983] must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions.  Thus, the Supreme Court has held that private activity will generally not be deemed state action unless the state has so dominated such activity as to convert it into state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.  Stated differently, to become state action, private action must have a sufficiently close nexus with the state that the private action may be fairly treated as that of the State itself.  And the establishment of the close nexus depends on whether the State has exercised coercive power or has provided such significant encouragement . . . that the choice must in law be deemed to be that of the State.

*DeBauche v. Trani*, 191 F.3d 499, 506-07 (4th Cir. 1999) (internal citations and quotation marks omitted).  Here, Plaintiffs allege only that two members of the Herndon Police Department "accompanied" the GT Defendants on the day of the search.  First Am. Compl. ¶ 29.  They admit that "the police officers, though present, did not actively search or seize items," *id.*, and that the officers "left after about one hour," *id.* ¶ 43.  Plaintiffs have not alleged that the police officers "dominated" the execution of the seizure order; at most, the actions of the Herndon police

---

[15] Plaintiffs suggest that *Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006), does not undermine their *Bivens* claims.  *See* Opp'n at 21.  In fact, the *Holly* court noted that (1) the Supreme Court has observed that the purpose of *Bivens* "is to deter individual federal officers from committing constitutional violations," *see* 434 F.3d at 291 (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001)); (2) neither the Supreme Court nor the Fourth Circuit has ever applied *Bivens* to private citizens, *see id.*; (3) the courts are deeply reluctant to expand *Bivens* into new contexts, *see id.* at 289; (4) the fact that *Bivens* is a judicially created doctrine (as opposed to a statute like Section 1983) creates "ample reason to be even more cautious about imputing liability to private actors," *see id.* at 292; and (5) it would be an "understatement" to consider the fact that the defendants were private citizens a "special factor counseling hesitation" in the *Bivens* context.  *See id.* at 290.

officers can be described as mere approval or acquiescence in the GT Defendants' conduct, which is insufficient to convert the GT Defendants into state actors.

Moreover, as the GT Defendants have argued, "private misuse of a statute or procedure . . . does not describe conduct which is actionable under § 1983 or *Bivens*, despite the participation of state officers in effecting statutory processes." *Winterland Concessions*, 735 F.2d at 262 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)); *see also Field Auto City, Inc. v. General Motors Corp*, 476 F. Supp. 2d 549, 555 (E.D. Va. 2007).

In *Winterland Concessions*, Winterland sued Trela for, among other things, violations of the Lanham Act.  735 F.2d at 259.  Trela filed a counterclaim against Winterland under section 1983 and *Bivens*, alleging that Winterland violated Trela's rights by "'improperly us[ing]' seizure orders to conduct, with the help of the U.S. Marshals Office and the Chicago police, 'illegal' searches of Trela's home and business."  *Id.* at 261-62 (citations omitted).  The court observed that Trela's counterclaim did not present "*any* facts demonstrating a colorable claim that Trela was deprived of constitutional rights by reason of actions attributable to either Chicago police officers or U.S. Marshals."  *Id.* at 262 (emphasis in original).  The court further noted that Trela alleged "no facts which show that the various state and federal officers were doing more than simply discharging the duties of their offices," and that Trela did not "attack the constitutionality of the actual procedures by which Winterland obtained court orders, as opposed to the manner in which it implemented them."  *Id*.  In response to Trela's argument that Winterland used the courts in a way that deprived him of due process, the court stated, "Mere use of the courts by a private party, without more, does not constitute governmental action for purposes of § 1983 or *Bivens*."  *Id*.  The court concluded that the district court had properly dismissed Trela's counterclaim.  *Id.*

In this case, Plaintiffs have not alleged that the Herndon police officers did more than simply discharge the duties of their offices. *See* First Am. Compl. ¶¶ 29, 43. The mere *presence* of state officers during part of the execution of the seizure order is not sufficient to transform private parties into state actors. *See Field Auto City,* 476 F. Supp. 2d at 555 (rejecting plaintiff's arguments that defendant was a state actor and that defendant was liable under section 1983 because it acted jointly with the sheriff). Nor have Plaintiffs attacked the constitutionality of the Lanham Act procedures for obtaining seizure orders. Instead, Plaintiffs merely challenge the manner in which the GT Defendants executed the seizure order, which is insufficient to state a claim under section 1983. *See Winterland Concessions*, 735 F.2d at 262 (citing *Lugar*, 457 U.S. at 941). Therefore, Plaintiffs' Section 1983 claims should be dismissed with prejudice as to the GT Defendants.

### C.      Plaintiffs Have Failed to State a Claim for Wrongful Seizure.

Although Plaintiffs admit that "[a] cause of action under § 1116 will normally lie against the trademark holder, not the attorney, who applies for such a seizure order," Opp'n at 22, Plaintiffs nevertheless argue that "actions taken in the carrying out of [a] seizure order are also actionable." *Id.*

The only case they cite for this point, *Gen. Elec. Co. v. Speicher*, 681 F. Supp. 1337 (N.D. Ind. 1988), does not actually stand for this proposition.[16] Plaintiffs' argument relies entirely on the *Speicher* court's discussion of the House Judiciary Committee report on the wrongful seizure statute. *See* Opp'n at 22. That report stated that "a seizure must be considered 'wrongful' to the extent that it is executed improperly." *Speicher*, 681 F. Supp. at 1341 (quoting

---

[16] Plaintiffs contradict their argument that the GT Defendants are liable for wrongful seizure by stating that, "[w]here, as here, the wrongfulness lies not in the order but in the carrying out of the seizure itself, this liability is still found against the applicant, here DVF." Opp'n at 22.

H.R.No. 98-997, 98th Cong., 2d Session 25-26).   However, the subsequent Joint Statement on the compromise bill, "which was intended to be 'the final and authoritative explanation of the legislative intent of [the] act,'" *Speicher*, 681 F. Supp. at 1341, enunciated "a few rules of thumb" for courts:  "The first is that the mere fact that a few legitimate items may have been seized does not make the seizure as a whole wrongful. . . .   The second is that a seizure will be wrongful if *the applicant* acted in bad faith in *seeking* it. . . .   Third, a seizure must be considered 'wrongful' if the matter seized is legitimate, noninfringing merchandise."  *Id.* at 1341-42 (quoting Joint Statement on Trademark Counterfeiting Legislation, Senate Comm. on the Judiciary, S.R. 98-526, 98th Cong., 2d Sess. 34-628, 629) (emphasis added).  Read fully, *Speicher* (and the legislative history) provides no support for extending liability to the GT Defendants on this claim.

As the GT Defendants have argued, *see* Mem. Supp. at 22, and as Plaintiffs all but admit in their opposition, *see* Opp'n at 22, attorneys are not proper defendants in a wrongful seizure action under the Lanham Act.  *See Elec. Lab. Supply Co. v. Cullen*, 977 F.2d 798, 805 (3d Cir. 1992) (holding that "attorneys cannot be defendants under section 1116(d)(11)"); *Clorox Co. v. Inland Empire Wholesale Grocers, Inc.*, 874 F. Supp. 1065, 1070 (C.D. Cal. 1994) ("Counsel are not considered 'applicants' for a wrongful seizure order pursuant to 15 U.S.C. § 1116(d).").  The GT Defendants therefore request dismissal of Count Four with prejudice.

### D.    Plaintiffs Have Failed to State a Claim for Abuse of Process.

Plaintiffs resort to mischaracterizing the GT Defendants' argument for dismissal of the abuse-of-process claim, suggesting that the GT Defendants seek dismissal solely on the ground that the *Seizure Order* was properly obtained.  *See* Opp'n at 23.  In fact, the GT Defendants argued much more:  (1) the *Seizure Order* was issued for the purpose of catching Mrs. Snyder

15

with counterfeit DVF dresses and obtaining evidence of counterfeiting; (2) the *Seizure Order* was in fact used for that purpose, as the GT Defendants found counterfeit dresses in Mrs. Snyder's possession when executing the *Seizure Order* and presented that evidence in the Trademark Enforcement Action; (3) Judge Cacheris relied on the evidence seized to hold her liable for copyright infringement. *See* Mem. Supp. at 23 (citing orders issued in the Trademark Enforcement Proceeding).

Plaintiffs do not contest any of these arguments, and their claim fails as a matter of law as a result. In Virginia, "[p]rocess is maliciously abused when it is used oppressively, *e.g.*, as a whip to force the payment of an alleged indebtedness or as a means of extortion." *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 369 S.E.2d 857, 862 (Va. 1988) (citations and quotation marks omitted). The *Seizure Order* was not put to such use here. It was instead issued and executed for the purpose of obtaining evidence of trademark infringement, as demonstrated by the judgment of liability in the Trademark Enforcement Action.

Moreover, Plaintiffs fail to address the argument that courts have long recognized the need for a "practical margin of flexibility" with respect to items subject to seizure under a seizure order. *See* Mem. Supp. at 23 (quoting *In re Grand Jury Subpoena (Under Seal)*, 920 F.2d 235, 239 (4th Cir. 1990)). They instead analyze the "plain view" doctrine, which is irrelevant here, because Plaintiffs do not allege that the GT Defendants seized any *incriminating* evidence improperly, but rather that the GT Defendants also seized non-incriminating items outside the scope of the order. *See* First Am. Compl. ¶ 36. As Plaintiffs' own cited case acknowledges, the law does not bar such seizures; to the contrary, "the mere fact that a few legitimate items may have been seized does not make the seizure as a whole wrongful." *Speicher*, 681 F. Supp. at 1341 (quoting Joint Statement on Trademark Counterfeiting Legislation, Senate Comm. on the

16

Judiciary, S.R. 98-526, 98th Cong., 2d Sess. 34-628, 629); *see also Hessel v. O'Hearn*, 977 F.2d

299, 302 (7th Cir. 1992) ("[I]tems not in fact necessary for proceedings against the owner can

always be returned whereas items not seized are unlikely to be found the next time.").[17]

Under Virginia law, "[a] legitimate use of process to its authorized conclusion, even

when carried out with bad intention, is not a malicious abuse of that process." *Donohoe Constr.*,

369 S.E.2d at 862.[18]  There has been no abuse of process here, because no one disputes that the

*Seizure Order* was issued and executed to gather evidence of counterfeiting, and that Judge

Cacheris entered judgment against Mrs. Snyder based on that evidence.  Accordingly, Plaintiffs'

abuse of process claim must be dismissed.

**E.      Count Six Fails to State a Claim for Conversion or Trespass to Chattels.**

**1.      Conversion**

Plaintiffs' conversion claim with respect to the restraint on Mr. Snyder's assets is barred

by *res judicata* and should be dismissed.  The proper time to challenge the asset freeze was when

the court issued the *Seizure Order* (attached as Exhibit 3 to the GT Defendants' Memorandum in

Support) in the earlier trademark infringement proceeding.  Instead of challenging the order,

Plaintiffs agreed to the continuation of the attachment of the bank accounts.[19]  *See* Mem. Supp.,

---

[17]   Indeed, the GT Defendants returned all seized items with the exception of the counterfeit dresses. *See* Mem. Supp. at 3 n.5.

[18]  Plaintiffs attempt to minimize this statement in *Donohoe* by striving to distinguish one case decided in 1919 that was cited in *Donohoe*. *See* Opp'n at 25.  That decision actually supports the GT Defendants' argument, however, finding no abuse of process because "[w]hatever motive and purpose the defendants might have had, what they actually did was in keeping with the object of the act." *See Glidewell v. Murray-Lacy & Co.*, 98 S.E. 665, 668 (Va. 1919).

[19] On a motion to dismiss, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted).  The orders in the trademark infringement proceeding are matters of public record, and may be considered on a motion to dismiss. *See Slaey v. Adams*, No. 1:08cv354, 2008 U.S. Dist. LEXIS 103903 (E.D. Va. Dec. 23, 2008) ("[C]ourts may take judicial notice of public documents (such as court records) neither referenced by nor integral to

Ex. 5.  Having had the opportunity to raise the issue in the earlier proceeding and having failed to do so, Plaintiffs' conversion claim with respect to the bank accounts is barred by *res judicata*. *See supra*, Section II.

Furthermore, as the GT Defendants have argued, *see* Mem. Supp. at 24-25, the attachment of bank accounts owned jointly by the Snyders or by Mr. Snyder alone was not wrongful.  Plaintiffs focus on the fact that Richard Snyder had not yet been named a Defendant in the trademark infringement action when this Court entered the order enjoining Catherine Snyder and "all persons or entities in concert or participation" with her from "transferring, disposing of, or secreting any money, stocks" or other assets of Mrs. Snyder.  Mem. Supp., Ex. 3. But Judge Cacheris found there were significant indications that Mr. Snyder was involved in Mrs. Snyder's sale of counterfeit DVF dresses.  *See supra*, at 7 n.8.  Considering the recognized need for flexibility in the execution of seizure orders, *see supra*, at 16, freezing these accounts cannot give rise to a cause of action for conversion.

Plaintiffs barely make an attempt to argue that their tangible personal property was converted, simply stating that "the items under controversy in the instant case were specifically *not* authorized by the seizure order."  Opp'n at 27.  However, as discussed above, *see supra*, at 16-17, Plaintiffs have not shown that the items taken were so far outside the scope of the seizure order that their seizure was wrongful.  Therefore, Count Six fails to state a claim for conversion.

### 2.    Trespass to Chattels

Plaintiffs state in conclusory fashion that Count Six, "as applied to [Plaintiffs'] bank accounts, states a cause of action for trespass to chattels," Opp'n at 28, but Plaintiffs have not cited a single case in Virginia or in any other jurisdiction that holds that money in a bank

---

the plaintiff's complaint without converting a motion to dismiss into one for summary judgment.").

account, or the bank account itself, can be the subject of a trespass to chattels claim.[20]

Therefore, to the extent that Count Six alleges that the attachment of Mr. Snyder's bank accounts

constituted a trespass to chattels, it fails to state a claim.

With respect to the tangible personal property seized, as the GT Defendants have argued,

*see* Mem. Supp. at 27, there is no liability for trespass to chattels unless the chattel is "impaired

as to its value, condition, or quality." *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 621

(E.D. Va. 2005). Plaintiffs argue that the "unavailability of the chattel for plaintiff's use is a

sufficient impairment to at least state a claim [for trespass to chattels]." Opp'n at 29. For

support they cite *America Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444 (E.D. Va. 1998), but

that case does not help their argument. The court there noted that the defendant's "spam" e-

mails overwhelmed the plaintiff's computer equipment and made it unavailable to the plaintiff's

subscribers, and that therefore "the *value* of that equipment to [plaintiff] is diminished even

though it is not physically damaged by defendants' conduct." *Id.* at 452 (citation omitted)

(emphasis added).

Here, Plaintiffs have alleged only that "[D]efendants wrongfully took control of [their]

property and deprived the Snyders of control or possession of this property." First Am. Compl. ¶

106. But the mere allegation of unavailability of a chattel, without a further allegation that the

unavailability impaired the value, condition, or quality of the chattel, is insufficient to state a

---

[20] *See Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So.2d 835, 846 (Fla. Dist. Ct. App. 2001) ("[A] bank account is not a chattel which can be the subject of a trespass."). The definition of the word "chattel" forecloses Plaintiffs' claim here. "Chattel" is defined as "movable or transferable property" and does not include money. Black's Law Dictionary 229 (7th ed. 1999)**.** A bank account is not "movable." *Cf. Inventory Locator Serv., LLC v. Partsbase, Inc.*, No. 02-2695 Ma/V, 2005 U.S. Dist. LEXIS 32680, at *35 (W.D. Tenn. Sept. 6, 2005) ("A database, like a bank account, is not movable personal property.").

claim for trespass to chattels.  *See SecureInfo Corp.*, 387 F. Supp. 2d at 621.[21]  Similarly, although Plaintiffs allege that the GT Defendants opened certain items of mail, First Am. Compl. ¶ 38, they fail to allege that doing so impaired the mail in any material way.  Therefore, Count Six fails to state a claim for trespass to chattels and should be dismissed with respect to the GT Defendants.

*       *       *       *       *

For the foregoing reasons, the GT Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

DATED: May 18, 2009                    Respectfully submitted,

                                              HARRIS, WILTSHIRE & GRANNIS LLP

_____
Thomas G. Connolly, Va. Bar No. 29164
Jacinda Lanum, Va. Bar No. 75104
1200 Eighteenth Street, N.W., Suite 1200
Washington, D.C.  20036
Telephone:  (202) 730-1300
Facsimile:   (202) 730-1301
tconnolly@harriswiltshire.com
jlanum@harriswiltshire.com

*Counsel for Defendants Greenberg Traurig LLP,
Harley Lewin, Steven J. Wadyka, and Janet Hajek*

---

[21]  Plaintiffs also fail to allege how long they were deprived of the use of their personal property, which is yet another reason Count Six does not adequately state a claim for trespass to chattels. *Cf.* Restatement (Second) of Torts § 218 ("One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if . . . the possessor is deprived of the use of the chattel for a *substantial* time"); *see also id.* cmt. e. ("The interest of a possessor of a chattel in its inviolability . . . is not given legal protection by an action for nominal damages for harmless intermeddlings with the chattel.").

20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| RICHARD SNYDER and CATHERINE SNYDER, | |
| *Plaintiffs,* | **Civ. A. No. 08-CV-01270 (GBL-TCB)** |
| v. | |
| GREENBERG TRAURIG, LLP et al. | |
| *Defendants.* | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of May, 2009, I electronically filed the foregoing Reply Memorandum of Greenberg Traurig LLP, Harley Lewin, Steven Wadyka, and Janet Hajek in Support of Their Motion to Dismiss and Request for Payment of Costs and a Stay of Proceedings with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Jonathan A. Nelson, Esq.
> Kenneth T. Cuccinelli, II, Esq.
> CUCCINELLI & DAY, PLLC
> 10560 Main Street, Suite 218
> Fairfax, VA 22030
>
> *Counsel for Plaintiffs Richard Snyder and Catherine Snyder*
>
> Lee Levine
> John B. O'Keefe
> LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
> 1050 17th Street, N.W., Suite 800
> Washington, DC 20036-5514
>
> *Counsel for Defendants Larissa MacFarquhar and Advance Magazine Publishers, Inc. (including Conde Nast, Inc.)*

Kevin Bryan Bedell
GREENBERG TRAURIG LLP
1750 Tysons Blvd,12th Floor
McLean, VA 22102

*Counsel for Diane Von Furstenberg Studio, L.P.*

Respectfully submitted,

HARRIS, WILTSHIRE & GRANNIS LLP

_____/s/_____
Thomas G. Connolly, Va. Bar No. 29164
Jacinda Lanum, Va. Bar No. 75104
1200 Eighteenth Street, N.W., Suite 1200
Washington, D.C.  20036
Telephone:  (202) 730-1300
Facsimile:  (202) 730-1301
tconnolly@harriswiltshire.com
jlanum@harriswiltshire.com

*Counsel for Defendants Greenberg Traurig, LLP,
Harley Lewin, Steven J. Wadyka, and Janet Hajek*

2